**No. 23-2097**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ANTHONY GAY,
*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Central District of Illinois, Rock Island
Case No. 4:20-cr-40026-JES-JEH-1
District Court Judge James E. Shadid

---

**BRIEF AND REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT ANTHONY GAY**

---

Michael T. Brody
*Counsel of Record*
Reanne Zheng
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com

*Counsel for Defendant-Appellant
Anthony Gay*

**ORAL ARGUMENT REQUESTED**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. _____23-2097_____

Short Caption:____USA v. Anthony Gay_____

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[X]      PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Anthony Gay _____

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

Jenner & Block LLP; Illinois Prison Project; Keegan Tindal & Jaeger; Schierer & Ritchie; McCall Law Offices PC; Federal Public Defender; Toner Law Office; Jack E. Dusthimer PC; Rodney R. Nordstrom

(3)      If the party or amicus is a corporation:

  i)      Identify all of its parent corporations, if any; and
   N/A _____

  ii)      list any publicly held company that owns 10% or more of the party's or amicus' stock:
   N/A _____

4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
 None _____

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
 None _____

Attorney's Signature  _/s/ Michael T. Brody_____      Date: October 19, 2023 (new)

Attorney's Printed Name:  Michael T. Brody_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).      **Yes**      X

                    **No**

Address: Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654

Phone Number:  (312) 923-2711                    Fax Number:  (312) 527-0484

 E-Mail Address:  mbrody@jenner.com

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. _____23-2097_____

Short Caption:____USA v. Anthony Gay_____

      To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

      The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      **[X]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

        Anthony Gay

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

Jenner & Block LLP; Illinois Prison Project; Keegan Tindal & Jaeger; Schierer & Ritchie; McCall Law Offices PC; Federal Public Defender; Toner Law Office; Jack E. Dusthimer PC; Rodney R. Nordstrom

(3)    If the party or amicus is a corporation:

    i)    Identify all of its parent corporations, if any; and
        N/A

    ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:
        N/A

4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

None

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

None

Attorney's Signature  /s/ Reanne Zheng        Date: October 19, 2023 (new)

Attorney's Printed Name:  Reanne Zheng

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule **Yes**
3(d).

                                            **No**    X

Address: Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654

Phone Number:  (312) 840-7379            Fax Number: (312) 527-0484

E-Mail Address:  rzheng@jenner.com

## TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ..............................................i

TABLE OF AUTHORITIES ...............................................................v

JURISDICTIONAL STATEMENT ....................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................ 1

STATEMENT OF THE CASE ......................................................... 2

SUMMARY OF ARGUMENT ........................................................ 14

STANDARD OF REVIEW ............................................................ 15

ARGUMENT ............................................................................ 16

I.    The District Court Erred In Denying Mr. Gay's Motion For Judgment
      Of Acquittal On The Firearm Charge. ..................................... 16

      A.   The Evidence Was Insufficient To Sustain A Conviction On The
           Firearm Charge. .................................................... 16

      B.   At A Minimum, Mr. Gay Is Entitled To A New Trial. ......................... 22

      C.   In The Alternative, Section 922(g), As Applied, Violates The
           Second Amendment. ..................................................... 26

II.   Mr. Gay Is Entitled To A New Trial, Or Alternatively Acquittal, On
      The Ammunition Charge. ........................................................ 29

      A.   Mr. Gay's Conviction On The Ammunition Charge Rested On
           Evidence Obtained In An Illegal Search. ........................................ 30

      B.   Mr. Gay Was Prejudiced By The Introduction Of Evidence
           Obtained In The Warrantless Search. ............................................. 34

      C.   At A Minimum, Mr. Gay Is Entitled To A New Trial. ........................ 35

III.  The District Court's Rulings Before The Second Trial Are Erroneous
      And Warrant A New Trial. .................................................... 36

      A.   In Violation Of His Constitutional Rights, The District Court
           Erred In Preventing Mr. Gay From Presenting His Defense. .............. 37

      1.   The District Court Erred In Excluding Evidence Relating To Mr. Gay's May 23, 2020 Encounter With The Rock Island Police Department. ..................................................................... 38

      2.   The District Court Erred In Excluding Testimony From Officer Jason Foy. ...................................................................... 41

      3.   The Exclusion Of Defense Witnesses Prejudiced Mr. Gay. ........... 43

   B.  The District Court Erred In Expediting The Retrial. ......................... 45

IV.  The District Court Erred In Denying Mr. Gay's Motion For A New Trial Based On Newly Discovered Evidence. ........................................... 47

CONCLUSION ................................................................................. 49

# TABLE OF AUTHORITIES

## CASES

*Atkinson v. Garland,* 70 F.4th 1018 (7th Cir. 2023) ................................ 27, 28

*Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 1400 (2022) ................................ 26

*Highmark Inc. v. Allcare Health Management System, Inc.*, 572 U.S. 559 (2014)............................................................................................ 16

*Holmes v. South Carolina*, 547 U.S. 319 (2006) ....................................... 44, 45

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019)................................................. 26

*Lowe v. City of East Chicago*, 897 F.2d 272 (7th Cir. 1990) ..................... 45, 46

*Murray v. United States*, 487 U.S. 533 (1988) ............................................... 29

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)........ 26, 27

*Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022).. ................................................................................................... 26

*Range v. Attorney General United States*, 69 F.4th 96 (3d Cir. 2023), *petition for cert. filed*, No. 23-374 (U.S. Oct. 5, 2023) .......................... 27, 28

*Scott v. Harris*, 550 U.S. 372 (2007)................................................................ 19

*Stoner v. California*, 376 U.S. 483 (1964) ................................................. 30, 34

*United States v. Amaral-Estrada*, 509 F.3d 820 (7th Cir. 2007) ...................... 30

*United States v. Arch*, 7 F.3d 1300 (7th Cir. 1993) ......................................... 34

*United States v. Bass*, 41 F. App'x 735 (6th Cir. 2002) ................................... 30

*United States v. Boender,* 649 F.3d 650 (7th Cir. 2011).................................. 17

*United States v. Bullock*, No. 18-CR-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023), *appeal docketed*, No. 23-60408 (5th Cir. July 31, 2023).......................................................................................... 28

*United States v. Cerro*, 775 F.2d 908 (7th Cir. 1985) ...................................... 37

*United States v. Clark*, 740 F.3d 808 (2d Cir. 2014) ....................................... 17

*United States v. Dickey*, 52 F.4th 680 (7th Cir. 2022)...................................... 47

*United States v. Dorais*, 241 F.3d 1124 (9th Cir. 2001) ............................ 31, 32

*United States v. Garcia*, 919 F.3d 489 (7th Cir. 2019) ..................................... 21

*United States v. Gill*, 58 F.3d 334 (7th Cir. 1995) ........................................... 16

*United States v. Glover*, 755 F.3d 811 (7th Cir. 2014)..................................... 15

*United States v. Griffin*, 684 F.3d 691 (7th Cir. 2012)..................................... 20

*United States v. James*, 540 F.3d 702 (7th Cir. 2008) .................................... 15

*United States v. Janati*, 374 F.3d 263 (4th Cir. 2004).................................... 45

*United States v. Kamel*, 965 F.2d 484 (7th Cir. 1992).................................... 48

*United States v. Katz*, 582 F.3d 749 (7th Cir. 2009) ............................20, 21, 23

*United States v. McGee*, 280 F.3d 803 (7th Cir. 2002) .................................... 16

*United States v. Morales*, 902 F.2d 604 (7th Cir. 1990) .......................22, 23, 24

*United States v. Norville*, 43 F.4th 680 (7th Cir. 2022).................................... 19

*United States v. O'Malley*, 833 F.3d 810 (7th Cir. 2016) ................................. 47

*United States v. Peak*, 856 F.2d 825 (7th Cir. 1988)................................. 37, 43

*United States v. Polequaptewa*, 858 F. App'x 225 (9th Cir. 2021).................... 35

*United States v. Rahimi*, 143 S. Ct. 2688 (2023).............................................. 28

*United States v. Rivera*, 901 F.3d 896 (7th Cir. 2018)..................................... 15

*United States v. Schneider*, 594 F.3d 1219 (10th Cir. 2010) ........................... 45

*United States v. Thomas*, 321 F.3d 627 (7th Cir. 2003) ............................ 20, 35

*United States v. Thomas*, 396 F. Supp. 3d 813 (N.D. Ind. 2019) ..................... 48

*United States v. Thomas*, 65 F.4th 922 (7th Cir. 2023)............................ 33, 35

*United States v. Washington*, 184 F.3d 653 (7th Cir. 1999) ............................ 23

*United States Bank National Ass'n ex rel. CWCapital Asset Management LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960 (2018) ................................................................................................... 16

*Washington v. Texas*, 388 U.S. 14 (1967)............................................36, 37, 40

**STATUTES**

U.S. Const. amend. VI ................................................................. 36, 40

18 U.S.C. § 922(g) ........................................................................ 1

18 U.S.C. § 924(a)(2) .................................................................... 1

18 U.S.C. § 924(e) ........................................................................ 1

18 U.S.C. § 3231 ........................................................................... 1

28 U.S.C. § 1291 ........................................................................... 1

**OTHER AUTHORITIES**

Brief for Respondent, *Garland v. Range*, No. 23-374 (U.S. Oct. 18, 2023) ..................................................................................... 29

Fed. R. Crim. P. 33(b)(1) ............................................................. 47

## JURISDICTIONAL STATEMENT

Defendant-Appellant Anthony Gay appeals from a judgment of conviction entered in the United States District Court for the Central District of Illinois, Rock Island.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.   On July 14, 2020, the Government charged Mr. Gay in a two-count indictment under 18 U.S.C. §§ 922(g), 924(a)(2), and 924(e). Dkt. 1. Count One charged Mr. Gay with being a felon in possession of a firearm. *Id.*  Count Two charged Mr. Gay with being a felon in possession of ammunition. *Id.*

Mr. Gay was twice tried before a jury.   The first jury was unable to reach a verdict.   *See* 04/22/2022 Minute Entry.   After the second trial, held the following month, the jury convicted Mr. Gay on both counts. Dkt. 382 at 802–03.   On May 25, 2023, after denying post-trial motions and conducting an evidentiary sentencing hearing, the district court sentenced Mr. Gay to 84 months of incarceration on each count to be served concurrently, and three years of supervised release.   Dkt. 436, A1–6.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.   Mr. Gay timely filed this appeal on May 31, 2023.  Dkt. 440.

## ISSUES PRESENTED FOR REVIEW

1.    Did the district court err in denying Mr. Gay's motion for judgment of acquittal on the firearm charge where the record is devoid of evidence establishing beyond a reasonable doubt that Mr. Gay possessed a firearm and

the Government's circumstantial case is inconsistent with testimony, video footage, and scientific evidence?

2.    Did the district court err in denying Mr. Gay's request for a new trial on the ammunition charge where the evidence shows the Government was aware Mr. Gay had the right to control the searched premises and the district court admitted evidence at trial that was unlawfully obtained during the Government's warrantless search of Mr. Gay's residence?

3.    Did the district court's rulings in advance of the second trial: (a) deny Mr. Gay's constitutional right to present a complete defense and to compel witnesses to testify on his behalf by excluding admissible, exculpatory evidence; and (b) prejudice Mr. Gay by compelling him, a *pro se* litigant, to trial without sufficient time to prepare where there was no counter-vailing reason for expedition?

4.    Did the district court err in denying Mr. Gay's motion for new trial based on newly discovered evidence that further undermined the Government's circumstantial case?

## STATEMENT OF THE CASE

On May 31, 2020, Anthony Gay was arrested in Rock Island, Illinois for unlawful possession of a weapon.  Dkt. 379 at 112, 140.[1]  On July 14, 2020, Mr. Gay was indicted by the United States on one count of being a felon in possession

---

[1] Citations to "Dkt._" are to the district court docket below; citations to "A_" are to the required appendix bound with this brief.

of a firearm and one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). Dkt. 1.

Mr. Gay represented himself during the majority of the proceedings below. He moved to suppress any evidence found as a result of the June 14, 2020 warrantless search of the hotel room at which he was living at the time of his arrest. Dkt. 86. The district court denied that motion, Dkt. 227, A21–24, and the case proceeded to trial on April 19, 2022. The jury was unable to reach a unanimous verdict. On April 22, 2022, the district court discharged the jury and declared a mistrial. *See* 04/22/2022 Minute Entry. Over Mr. Gay's objection, the case was reset on an expedited schedule for a May 31 trial, which the district court then *sua sponte* advanced to begin on May 16, 2022. *See* 04/27/2022 Minute Entry. After the second trial, Mr. Gay was found guilty on both counts. Dkt. 382 at 802–03. After denying post-trial motions and a conducting a two-day sentencing hearing, the district court sentenced Mr. Gay to 84 months in prison on each count, to be served concurrently. Dkt. 436, A1–6.

### A.  May 31, 2020 Arrest

On May 31, 2020, at approximately 12:04 a.m., Rock Island Police Officers Quentin Sailor and Zachary Costas were on routine patrol. Dkt. 379 at 76–77, 112. The officers observed a black Dodge Caliber that did not have a rear registration light, proceeded to follow the vehicle, and initiated a stop by turning on the squad car's emergency lights as the vehicle began turning into a driveway.

*Id.* at 80–81, 83.  Mr. Gay exited the front passenger seat of the vehicle and begin
to walk away from the vehicle.  *Id.* at 116–17.

The officers saw Mr. Gay enter an alley.  *Id.* at 118, 121.  Officer Sailor
pursued Mr. Gay on foot, while Officer Costas approached the two other
occupants of the vehicle.  *Id.* at 91–92, 94.  Officer Sailor testified that he saw
Mr. Gay fall flat on the ground with his arms out, get back up, and continue to
move away from Officer Sailor.  *Id.* at 120–21.  At that time, Officer Sailor ordered
Mr. Gay to get on the ground, saying he would tase him if he did not comply.  *Id.*
at 121.  Mr. Gay surrendered.  *Id.*  Officer Sailor placed Mr. Gay in handcuffs
and walked him back to the squad car.  *Id.* at 126.

As other officers arrived on the scene, *id.* at 94, Officer Sailor began
retracing Mr. Gay's path.  *Id.* at 129.  Officer Alex Bowman assisted Officer Sailor
in searching the path and later alerted him to a Glock model 36 on the ground.
*Id.* at 129–30; *see* Dkt. 380 at 431.  Although he was not the officer who found
the gun, Officer Sailor later testified that the gun was located approximately
where Officer Sailor said Mr. Gay fell.  Dkt. 379 at 130.  Officer Sailor notified
the dispatchers of the serial number, collected the firearm into evidence, and
transported Mr. Gay to the Rock Island County Jail.  *Id.* at 131, 139–41.

The incident on May 31 was not Mr. Gay's first interaction with the Rock
Island Police Department.  Approximately one week earlier, on May 23, 2020,
Mr. Gay and his family members were shot at in two separate incidents in Rock
Island.  Mr. Gay was stopped and searched by the officers from the Rock Island
Police Department who responded to the second incident.  Dkt. 334 at 566.

During that stop and search, Officer Scott Gable seized from Mr. Gay three cell phones, a hotel door key card for room 133 at the American Motor Inn, a debit card, and approximately $1,500 in cash.  *Id.* at 567–68, 571.   Mr. Gay complained of this action and later sued the Rock Island Police Department alleging that Officers Gable and Keys had robbed him.  *See Gay v. Keys*, 4:20-cv-04250 (C.D. Ill.).

### B.  June 14, 2020 Search Of Mr. Gay's Hotel Room

At the time of his arrest, Mr. Gay was renting room 133 at the American Motor Inn in Rock Island.  *See* Dkt. 68 at 1.  Being held at the Rock Island County Jail, Mr. Gay was unable to return to his hotel room.  On June 1, 2020, the day his rental was set to expire, Mr. Gay called his girlfriend who facilitated a three-way call with Pritesh Patel.  Dkt. 311 at 64.  Mr. Patel ran the hotel with his wife Kalpana.  *Id.* at 52.  Mr. Patel's mother-in-law owned the hotel.  *Id.*  Mr. Gay attempted to arrange for his girlfriend to collect his property from the hotel room. *See id.* at 62–63, 69.  Mr. Patel said that if someone other than Mr. Gay wished to collect the property, the police needed to oversee the transfer.  *See id.* at 74.  Mr. Patel also told Mr. Gay he could leave his property in the hotel room for two weeks, after which it would be thrown away.  *Id.* at 71–72.  Mr. Patel stated on the phone he would put the property in storage and charge Mr. Gay a fee, but in fact he left the items in Mr. Gay's room.  *Id.* at 72–73.  The record is devoid of direct evidence whether anyone entered the room during that two-week period of time.

On June 14, 2020, the Patels called the Rock Island Police to report that ammunition had been found in a hotel room, indicating that someone had entered the room. *Id.* at 75–76. Officer Mario Mendoza responded to the service call and was directed to room 133 by Mr. Patel and his wife. Dkt. 311 at 79–81. At the hearing on Mr. Gay's motion to suppress, Officer Mendoza testified Mrs. Patel explained that Mr. Gay had rented room 133 from May 10, 2020 until June 1, 2020, and that "after two weeks they were going to get his belongings and store it for him." *Id.* at 142, 144. The Patels stated that they entered the room and found ammunition in the dresser while cleaning the room. *Id.* at 144–45, 149. The ammunition consisted of three types of bullets, 14 Winchester .45 rounds, a SIG .45 round, and an Armscor round, which Officer Mendoza initially misidentified as another Winchester .45 round in his report. Dkt. 380 at 388-90. The ammunition was inside a blue latex glove with tissue inside a bag. Dkt. 311 at 145–46. Officer Mendoza photographed the ammunition and collected the items into evidence. *Id.*

### C. First Trial

Mr. Gay's first jury trial began on April 19, 2022. *See* Dkt. 332. The Government relied primarily on testimony from Officers Sailor and Costas, who arrested Mr. Gay on May 31, 2020; and Officer Mendoza, who searched Mr. Gay's hotel room on June 14, 2020.

Officer Sailor testified that on May 31, he saw Mr. Gay running with his hands forward. Dkt. 332 at 47. He admitted that he did not see a gun in either of Mr. Gay's hands or see him throw or drop anything while he was running. *See*

*id.* at 47, 49, 73.  Officer Sailor testified that Mr. Gay fell while moving away from Officer Sailor.  *Id.* at 48–49.  Officer Sailor wore a body camera that was operating during this episode.  *Id.* at 62–63.  His bodycam footage was admitted into evidence.  *Id.* at 65.  However, that video footage did not confirm his testimony.  *Id.* at 68.  As Officer Sailor admitted, the video did not show Mr. Gay fall, as Officer Sailor described, "flat on the ground, chest down, arms out."  *Id.* at 48.

At trial, Officer Sailor acknowledged he did not see a gun as he walked Mr. Gay back to the squad car, and his bodycam footage did not show a gun on the ground.  Dkt. 332 at 68–69.  Although he wrote in his report and testified in a prior hearing that he located the gun, Officer Sailor admitted on cross-examination that it was Officer Bowman who alerted him to the gun, *Id.* at 100, 102, and Officer Sailor testified that it was lying "[a]pproximately where Anthony Gay fell and where he would have put his left hand," *id.* at 50–51.

The Government did not call Officer Bowman to testify as to the circumstances under which he located the gun.  Mr. Gay called Officer Bowman in his defense case and elicited from him that despite being the one who found a gun, Officer Bowman did not submit a police report evidencing his actions.  Dkt. 334 at 559.

Officer Costas testified that he believed Mr. Gay might have had a firearm because he was not moving his arms.  Dkt. 332 at 130–31.  However, Officer Costas admitted that he did not see anything in Mr. Gay's hands, did not see Mr. Gay drop or throw anything, and was not able to see Mr. Gay's waistband.  *See id.* at 128–31.

7

The Government also called Da-il Kim, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") employee who conducted the DNA analysis on the gun and ammunition; Garrett Alderson, a fingerprint examiner; and Detective Greg Whitcomb, who processed the gun.  None of their testimony supported an inference of guilt.  Mr. Kim testified that there was a partial DNA profile on the gun, but it was not suitable for comparison because "there was not enough genetic material" and "the profile [was] a mixture of individuals."  Dkt. 333 at 308–10.  Mr. Alderson similarly testified he could not obtain any fingerprints suitable for comparison from the gun or the ammunition.  *Id.* at 336–37, 344–45, 347–48.  Detective Whitcomb likewise did not provide testimony supporting the conclusion that Mr. Gay possessed the gun or ammunition.  In fact, it was Detective Whitcomb who attempted and was unable to recover enough DNA evidence from the gun for comparison.  Dkt. 333 at 407–10.  Detective Whitcomb also testified that he never interviewed the other occupants of the vehicle or the occupants of the address where the gun was recovered.  *Id.* at 458–59, 472–73, 461–62.

Finally, the Government called Pritesh Patel, whose family ran the American Motor Inn (Dkt. 333 at 374–81); and ATF Special Agent Jason Pessman, who testified on the type of firearm recovered on May 31, 2020, and the type of ammunition seized on June 14, 2020, *id.* at 478–504.

Mr. Gay represented himself at the first trial.  He presented a defense case that demonstrated other reasons why a gun was located on the ground outside a particular premises in Rockford.  He called Officer Jennifer Laud, who testified

8

that the gun recovered on May 31, 2020 was reported missing on March 12, 2020. *See* Dkt. 334 at 531–32. He also called Officer Jason Foy, who testified that the area where Mr. Gay was arrested was a high service 911 call area, including calls for shots fired and ambulance assistance at the particular premises where Mr. Gay was arrested on May 31. Dkt. 334 at 549–50, 553. He called Officer Bowman, who arrived on the scene after Mr. Gay had been placed under arrest and testified that he alerted Officer Sailor to the gun. *Id.* at 561–63.

In addition, Mr. Gay presented evidence of his prior interaction with the Rock Island Police Department just over a week before his May 31, 2020 arrest. On May 23, 2020, Mr. Gay and his family members were shot at in two separate incidents in Rock Island. Mr. Gay was stopped and searched by officers from the Rock Island Police Department who responded to the second incident. Dkt. 334 at 566. During that stop and search, Officer Scott Gable seized three cell phones, a hotel door card for room 133 at the American Motor Inn, a debit card, and $1,537 in cash from Mr. Gay. *Id.* at 567–68, 571. Mr. Gay subsequently sued the Rock Island Police Department, alleging that Officers Gable and Keys had robbed him. *See Gay v. Keys*, 4:20-cv-04250 (C.D. Ill.). That civil suit was pending during the time of both of Mr. Gay's trials.[2]

---

[2] The civil case was resolved. On June 3, 2022, judgment was entered against defendants pursuant to Mr. Gay's acceptance of defendants' offer of judgment in the amount of $22,500.00 inclusive of attorneys' fees and costs.

During the first trial, Mr. Gay introduced evidence regarding the May 23, 2020 incident to undermine the testimony of the Rock Island Police Officers regarding their actions on May 31 and to explain why Mr. Gay was wary of the Rockford Police Department when the car in which he was a passenger was stopped for a missing "rear registration light."  Officer Gable testified that he seized the key card for Mr. Gay's hotel room, cell phones, debit card, and cash from Mr. Gay on May 23, 2020.  Dkt. 334 at 567–68, 571.  Mr. Gay called Dora Villarreal Nieman, the State's Attorney of Rock Island County, who testified that she received reports of Mr. Gay's complaints that the Rock Island Police had stolen those items from him.  Dkt. 334 at 595–97.  Mr. Gay also called Carolyn Hough, who testified that she had called Ms. Villarreal regarding the property Rock Island Police seized from Mr. Gay, and Amy Blommer, who testified that she attempted to retrieve Mr. Gay's property from his hotel room.  *Id.* at 603–16, 628–33.

On April 22, 2022, the first trial resulted in a hung jury, and the district court declared a mistrial.  *See* 04/22/2022 Minute Entry.  The Government indicated it would retry the case.  *Id.*  Over Mr. Gay's objection, the pretrial conference was set for May 23, 2022 and the second trial was set for May 31, 2022.

### D.  Second Trial

On April 26, the district court scheduled a status conference for the following day. Dkt. 306. At that conference, the district court *sua sponte* advanced the trial on its calendar and vacated the May 23 pretrial conference

and May 31 trial dates.  04/27/2022 Minute Entry.  Over Mr. Gay's objection, the district court reset the pretrial conference for May 9, 2022 and the trial for May 16, 2022.  *Id.*

The district court also barred the testimony of Scott Gable and Dora Villarreal as "not relevant," and further barred completely as "not relevant" any reference to events that took place on May 23, 2020.  *Id.*  The Government had not moved for that relief at that time, but had opposed the introduction of that testimony in the first trial.  Dkt. 187.  Judge Shadid ordered that this testimony would not be permitted in the second trial.  *See* 04/27/2022 Minute Entry.

On April 29, 2022, Mr. Gay moved to reconsider the district court's rulings from the April 27 status hearing.  Dkt. 312.  He argued that the May 23 events and the testimony from Officer Gable and Dora Villarreal were relevant to the Government's theory that Mr. Gay attempted to conceal ammunition in his hotel room and explained why he did not want the police around his property.  *Id.*  On May 2, 2022, Mr. Gay filed a motion to reconsider the denial of his motion to suppress evidence found as a result of the warrantless search of his hotel room. Dkt. 315.  The district court denied both motions to reconsider.  *See* Dkt. 338 at 17–20; 05/09/2022 Minute Entry.  On May 4, 2022, Mr. Gay filed a motion for standby counsel in the second trial. Dkt. 318.  The district court denied all of Mr. Gay's requests.  *See* Dkt. 338 at 13–16; 05/09/2022 Minute Entry.

Mr. Gay also objected to the trial date.  At the time of the trials, Mr. Gay was subject to home monitoring in Rock Island, a lengthy drive to the courthouse.  He also needed to travel several hours a week to visit his mother,

who was in the hospital.  He explained that the short date for the second trial, coupled with his distance from the courthouse, impeded his ability to prepare for a second trial.  *See* Dkt. 343; Dkt. 379 at 4–12.  The district court refused to alter its expedited schedule.  Dkt. 379 at 9–12.

Mr. Gay's second jury trial began on May 16, 2022.  *See* Dkt. 379.  The Government again called Officers Sailor and Costas to testify regarding the May 31, 2020 arrest.  This time, Officer Sailor corrected his prior testimony that he was the one who found the gun.  *See* Dkt. 379 at 156–57.  In other respects, the Government's case was similar to its factual presentation in the first trial.  The Government also called Officer Mendoza and Mr. Patel to testify regarding the June 14, 2022 search of Mr. Gay's hotel room, *see* Dkt. 380 at 360–93; *id.* at 245–96; Mr. Kim to testify regarding the DNA analysis of the gun, *id.* at 475–86; Mr. Alderson to testify regarding the fingerprint analysis of the gun and ammunition, *id.* at 416–53; and Detective Whitcomb to testify regarding the firearm and ammunition, *see* Dkt. 381 at 515–635.  As in the first trial, no witness testified that Mr. Gay ever possessed the gun that the Rock Island Police testified they found on the ground on May 31, 2022.

Mr. Gay's defense case, however, was gutted by the district court's pretrial rulings.  Based on the court's rulings, Mr. Gay was not allowed to call Jason Foy, Scott Gable, or Dora Villarreal.  Mr. Gay argued that these witnesses cast doubt on the Government's version of events during the first trial.  Mr. Gay proceeded *pro se*, without standby counsel.

On May 19, 2022, the jury returned a guilty verdict on both counts. Dkt. 382 at 802–03.

### E.  Post-Trial Motions

On October 14, 2022, Mr. Gay filed his consolidated post-trial motions, including a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 and a motion for new trial under Rule 33.  Dkt. 403.  He also challenged the indictment under the Second Amendment.  *Id.*  In its response, the Government argued, as it had at trial, that the evidence of the one charge supported the other charge, and vice versa.  Dkt. 410.  The Government argued that Mr. Gay fled from police in a traffic stop "despite having no liability for a traffic violation" as a passenger; that he "was insistent that no one go in his room without him being present"; and that this supported the jury's conclusion that Mr. Gay possessed both the charged firearm and ammunition, even in the absence of forensic evidence or witness testimony connecting Mr. Gay to either object.  *Id.*; *see id.* at 2, 4.  The district court agreed that this "provided plenty of evidence to find Mr. Gay guilty" and denied the consolidated post-trial motions. Dkt. 412 at 2, 5, A17, A20.

On May 19, 2023, Mr. Gay filed a motion for new trial based on newly discovered evidence.  Dkt. 428.  After the expedited second trial, Mr. Gay was able to locate an expert witness, Adam Dew, to review Officer Sailor's bodycam footage.  Mr. Dew "slowed and enhanced" the portion of the footage showing "Officer Sailor walking Mr. Gay back" to the squad car.  *Id.* at 3. That enhanced

video footage indicated there did not appear to be a gun where the gun was later located.  *Id.*

The Court denied the motion for new trial.  Dkt. 453 at 8–15, A8–15.

### F.  Sentencing And Appeal

The district court conducted a two-day sentencing hearing on May 23 and May 24, 2023.  Dkts. 453; 451.  The Government recommended a sentence at or above the top of the advisory Guidelines Range of 100 to 125 months and requested that the court impose a sentence of at least 105 months at the sentencing hearing.  Dkt. 451 at 312–13.  Mr. Gay presented evidence demonstrating that imprisonment would not serve the objectives of the criminal law, which would be better served in Mr. Gay's case by a probationary sentence.  *Id.* at 354–58.  On May 24, 2023, the district court sentenced Mr. Gay to 84 months on each count, to be served concurrently, and three-years supervised release.  *Id.* at 366–67.  On May 25, 2023, Mr. Gay timely filed his notice of appeal.  Dkt. 440.

### SUMMARY OF ARGUMENT

The Court should reverse Mr. Gay's conviction on the firearm charge as the Government failed to prove Mr. Gay's guilt beyond a reasonable doubt.  There was no direct evidence that Mr. Gay ever possessed a firearm, and substantial evidence, including video evidence and other forensic evidence introduced by the Government, disproved any theory of guilt.  The Government's case rested on the fact that a gun was found in an area that Mr. Gay briefly passed through.  Even that testimony, however, was refuted by incontrovertible evidence, including the

video taken at the time, leaving the jury's verdict resting on speculation. In the alternative, Mr. Gay is entitled to a new trial on the firearm charge.

Mr. Gay is entitled to a new trial, or alternatively acquittal, on the ammunition charge. The Government's circumstantial case rested on the fruits of an illegal search. Moreover, as it did with the firearm charge, the Government attempted to bootstrap insufficient evidence of one charge—here, the firearm charge—to make up for its insufficient evidence on the ammunition charge.

The district court's erroneous pretrial rulings warrant a new trial. The district court precluded Mr. Gay from presenting a complete defense, rejecting relevant exculpatory testimony that undermined the Government's charge. The prejudice from those rulings is apparent, as the first jury that heard the excluded evidence declined to convict Mr. Gay. Moreover, the district court erred in rushing the case to trial, thereby prejudicing Mr. Gay.

Finally, the district court erred in denying Mr. Gay's post-trial motions. Newly discovered evidence further undermined the Government's claim and warranted a new trial. In a case based on flimsy circumstantial proof, the consideration of the newly discovered evidence would have made a difference and its exclusion was prejudicial.

## STANDARD OF REVIEW

The Court reviews *de novo* the denial of Mr. Gay's motion for judgment of acquittal and the denial of Mr. Gay's post-trial motion seeking a new trial based on newly discovered evidence. *See United States v. Rivera*, 901 F.3d 896, 900–

01 (7th Cir. 2018) (motion for judgment of acquittal); *United States v. James*, 540 F.3d 702, 706 (7th Cir. 2008) (same).

This Court reviews *de novo* the district court's denial of Mr. Gay's motion to suppress evidence and the application of the exclusionary rule in this case. *See United States v. Glover,* 755 F.3d 811, 815, 818 (7th Cir. 2014). Factual determinations relevant to the application of the legal standard are subject to deferential review. *See United States v. McGee*, 280 F.3d 803, 805 (7th Cir. 2002). *See also U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 965–67 (2018).

The district court's decisions to preclude Mr. Gay's defense case are mixed questions of law and fact. Whether the decisions implicate Mr. Gay's constitutional right presents a question of law that is reviewed *de novo*, "without the slightest deference." *U.S. Bank Nat'l Ass'n*, 138 S. Ct. at 965. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014) ("Traditionally, decisions on 'questions of law' are 'reviewable *de novo*.'") (citation omitted). The decision to expedite the retrial of this case is subject to abuse of discretion review. *United States v. Gill*, 58 F.3d 334, 337 (7th Cir. 1995).

**ARGUMENT**

**I.     The District Court Erred In Denying Mr. Gay's Motion For Judgment Of Acquittal On The Firearm Charge.**

**A.  The Evidence Was Insufficient To Sustain A Conviction On The Firearm Charge.**

There was no evidence that Mr. Gay actually possessed a gun. No witness testified that a gun was in his hand, waistband, pocket, or otherwise in his

possession.  No one testified that he dropped or threw a gun.  No scientific evidence supported a finding that he possessed a gun.  Although the tools of criminal forensic evidence were employed by the Government, including DNA testing, no such evidence supported a finding of guilt.  In these circumstances, even considering "the evidence in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Boender,* 649 F.3d 650, 654 (7th Cir. 2011).   While this Court should acknowledge the jury's assessment of witness credibility, the Court still reviews the evidence *de novo.  Id.*  This Court must assess whether the evidence was sufficient to sustain a finding of guilt.  The existence of "*any* evidence" in support of the verdict does not require the Court to affirm.  *United States v. Clark*, 740 F.3d 808, 811 & n.2 (2d Cir. 2014).

Given that there was no evidence that Mr. Gay himself ever had actual physical possession of the gun, the circumstantial evidence on which the Government relied must be examined carefully.  The sole evidence supporting the jury's verdict that Mr. Gay possessed a gun was the testimony that a gun was later recovered on the ground when the police retraced Mr. Gay's path from the automobile he exited.  Even that evidence was unpersuasive.  No witness— and there were several professionals trained to observe who were intently watching Mr. Gay at the time—testified a gun was ever in his possession.  No scientific evidence supported a finding of guilt, as Mr. Gay's fingerprints were not found on the gun and his DNA was not identified.  (There was also no evidence that Mr. Gay was wearing gloves at the time or otherwise taking steps

to avoid leaving fingerprints or material from which DNA could be isolated.)  As Officer Sailor conceded, even the police bodycam video, which was taken during the supposed flight, did not reveal a gun or show that Mr. Gay had fallen where the gun was supposedly recovered.

The Government's circumstantial case is insufficient to sustain a finding of guilt. Officer Sailor, the witness who closely observed Mr. Gay during the incident, admitted at trial that he never saw Mr. Gay with a gun at any point on May 31, 2020 and he never saw Mr. Gay toss, drop, or dispose of anything as he ran.  Officer Sailor did not find a gun when he searched Mr. Gay.  Nor did he see a gun as he walked Mr. Gay back to the squad car and passed through the same area, despite being on the lookout for any gun that Mr. Gay may have discarded. Instead, Officer Sailor testified that he believed Mr. Gay may have had a gun based on the way he held his arms as he ran.

Officer Costas observed the situation, but from a greater distance.  He similarly believed that Mr. Gay had a gun based on the way he held his arms as he exited the vehicle, but likewise admitted that he never saw Mr. Gay with a gun.  The claim that evidence showed that Mr. Gay held his arms in front of him in a particular way supports a finding of guilt is insufficient.  First, it is an unreasonable inference that Mr. Gay held his arms in a particular way because he had a gun in his hands.  That inference is inconsistent with the eyewitness accounts and video footage that revealed no gun in his hands.  Moreover, it is inconsistent with the Government's theory of guilt.  The Government argued to

18

the jury, based on nothing but supposition, that Mr. Gay had a gun in his waistband. His arm position had no bearing in this case.

The Government's primary evidence-based argument is that the evidence showed that Mr. Gay fell and the gun was recovered in the vicinity of where he fell. Yet video evidence refutes that Mr. Gay fell. Officer Sailor's bodycam footage did not show Mr. Gay falling at any time. This Court has treated video evidence as conclusive evidence, even where there is contrary evidence, including eyewitness testimony. *See United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022) (video showed defendant did not stop at stop sign, resolving challenge to police conduct based on testimony). In the circumstances of this case, video evidence contradicting the Government's theory of guilt itself creates reasonable doubt. *See generally Scott v. Harris,* 550 U.S. 372, 380–81 (2007) (where video "utterly discredited" a version of events "so that no reasonable jury could believe it," Supreme Court rejected contrary testimony as a matter of law).

Nor is the recovery of a gun in the vicinity sufficient to sustain the Government's burden to prove guilt beyond a reasonable doubt. In addition to the bodycam video, other evidence discredits the claim that the gun was ever possessed by Mr. Gay, as no observer ever saw Mr. Gay possess and then discard the gun. The evidence also undermines the assertion that the gun was recovered along the path Mr. Gay had traveled. Even though Officer Sailor walked Mr. Gay past the area where the gun was later found, the bodycam footage does not show a gun on the ground, and Officer Sailor did not see a gun there, or anywhere. The gun was processed for DNA and fingerprints, and neither Mr. Gay's DNA nor

fingerprints were found.  In fact, despite Officer Sailor's testimony that the gun appeared "freshly placed," Dkt. 379 at 130–31, the Government's witnesses testified that neither latent fingerprints nor a DNA sample sufficient for comparison could be collected from the gun.

Critically, even if Officer Sailor's testimony is believed that Mr. Gay ran and fell in approximately the same area where a gun was later located, that inference cannot support a guilty verdict that Mr. Gay possessed the gun.  This Court has "explained repeatedly that mere proximity to contraband is not enough to establish a sufficient nexus to prove constructive possession." *United States v. Griffin*, 684 F.3d 691, 696–98 (7th Cir. 2012); *United States v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009).

If a firearm is found in an area accessible to the public—or private property that is not within the defendant's control—presence on the property where it is located, or mere association, without more, with the person who does control the contraband or property on which it is found, is insufficient to support a finding of possession.  *United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003) (collecting cases).  In *Thomas*, police officers responded to a domestic disturbance call noting a "possible gun on scene" and stopped and frisked the defendant as he was leaving the apartment building's courtyard.  *Id.* at 629–30. After the police let the defendant leave the courtyard, the defendant's sister ran out of the building, told the police the defendant had pointed a gun at her, and said he had thrown a gun into the bushes outside the building.  *Id.* at 630.  The defendant ran from the building but was "caught a few blocks away." *Id.*  No

gun was found on the defendant, but the police recovered a loaded revolver under the stairs leading to the building's entrance. *Id.* This Court held that constructive possession could not be established by the defendant's proximity to the firearm, noting the gun was found under the apartment building's entrance stairs, a public area the defendant did not control, and there was no evidence the defendant even lived in the building. *Id.* at 636. The same is true here—the gun was found in a public area—and the evidence presented at the first trial but excluded from the second shows that public place was the scene of prior, recent shootings that had no connection to Mr. Gay.

In closing arguments and in its response to Mr. Gay's motion for judgment of acquittal, the Government recognized that it lacked evidence of possession of the gun, and tried to bootstrap evidence of possession of a firearm from evidence of possession of ammunition. Dkt. 381 at 770–71. The Government did the same thing with the ammunition charge—it argued Mr. Gay must have possessed the ammunition because he possessed the gun. *Id.* at 772–73. Yet the Government must prove its case beyond a reasonable doubt—it cannot infer guilt of one charge from the insufficient evidence of another charge. *See United States v. Garcia*, 919 F.3d 489, 503 (7th Cir. 2019) ("Circumstantial evidence that leads only to a 'strong suspicion that someone is involved in a criminal activity is no substitute for proof of guilt beyond a reasonable doubt.'") (citation omitted); *Katz*, 582 F.3d at 752 ("A jury cannot speculate its way out of reasonable doubt.").

21

The Government cites two pieces of corroborating evidence to support the inference that Mr. Gay possessed the gun: testimony that Mr. Gay fled from the traffic stop; and testimony that Mr. Gay did not want anyone to enter his hotel room where the same type of ammunition as used in the gun was found two weeks later.  The Government told the jury:  "[h]e had [that Glock] when he fled from police.  That's why he fled from police during that traffic stop" and "the reason that those [types of ammunition] were the same is because they belong to the same person and that's the defendant."  Dkt. 381 at 763, 773.  As shown in *infra* Section II, the Government's warrantless search that produced the bullets was unlawful, and Mr. Gay's recent interactions with the Rockford Police explained why he did not want to stick around after what was a plainly pretextual traffic stop.  This testimony persuaded at least some jurors in the first trial, yet the trial judge erroneously excluded it from the second trial.  *See infra* Sections II and III(a).  Even viewing the evidence in the light most favorable to the Government, the Government's inference is not supported by the evidence.  Instead, the Government's claim requires the jury to assume Mr. Gay possessed both the charged firearm and charged ammunition, and there was insufficient evidence to support either charge.

### B.  At A Minimum, Mr. Gay Is Entitled To A New Trial.

As shown above, Mr. Gay is entitled to acquittal on the firearm charge, Alternatively, in light of the inconsistent and conflicting evidence, and the Government's trial strategy to merge the firearm and the ammunition charges, Mr. Gay is entitled to a new trial on the firearm charge.  The inconsistencies in

the Government's evidence, and its explicit tying together of the firearm and ammunition charges, warrants a new trial.

If "the complete record, testimonial and physical," leaves a strong doubt as to a defendant's guilt "beyond a reasonable doubt," even though not so strong a doubt as to require a judgment of acquittal, the district judge is obliged to grant a new trial. *United States v. Morales*, 902 F.2d 604, 608 (7th Cir. 1990). Unlike a motion for judgment of acquittal, a court evaluating a request for a new trial may weigh evidence, evaluate credibility, and "grant a new trial if the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999).

Here, the record of the second trial creates strong doubt as to the correctness of the verdict. Coupled with the evidence obtained in the warrantless search improperly introduced in both trials, *see infra* Section II, and the evidence presented at the first trial and erroneously excluded from the second trial, *see infra* Section III, the complete record establishes an overwhelming case for a new trial. Particularly where both charges requires the jury to bootstrap an inference based on the other charge, and each charge relies only on circumstantial evidence, a new trial should be ordered on both counts. *See Katz*, 582 F.3d at 752.

In *Morales*, this Court ordered a new trial for a defendant who was convicted based on conflicting witness testimony and physical evidence. 902 F.2d at 608–09. The arresting officer testified that he saw the defendant shoot

23

a firearm, he chased the defendant into a nearby bar, and he saw the defendant make a tossing motion toward a row of sinks by the bar. *Id.* at 606. The officer then arrested the defendant and searched the area around the sinks, finding a gun in one sink and the clip for the gun in another. *Id.*

On its own, the arresting officer's testimony that he saw the defendant shoot a firearm "might well have justified a finding of guilt beyond a reasonable doubt even if the gun had never been found," but the testimony was "undermined not only by the physical evidence, but also by the inconsistencies in [the officer's] accounts of the incident[.]" *Id.* at 608. For example, the officer claimed that he never lost sight of the defendant from the moment he fired the gun, never saw the defendant remove the clip, and only saw the defendant toss the gun in a single motion. *See id.* at 607. But this account was undermined by the gun and the clip found in separate sinks, and testimony from the bar owner who saw the defendant enter the bar but never saw him throw anything. *Id.* at 606. Testing confirmed the gun found in the sink was in working condition, but the chamber should have contained a bullet if it had just been fired, and it did not. *Id.* In light of these inconsistencies, the officer's story was "not impossible, just improbable" and may not have been "substantially more probable than the alternative hypothesis" advanced by the defendant. *Id.* at 607–08.

The Government in this case has had trouble coming up with a theory that fits the evidence. While the Government asserts that Mr. Gay hid the gun in his waistband and lost the gun when he fell, Dkt. 381 at 782–83, 787, it also asserts that he is guilty of possession "[w]hether he threw it, whether he dropped it,

24

whether it fell out of his pants," *id.* at 763.  The problem with the Government's rotating theories is that the evidence does not support a coherent theory of guilt. After reviewing the bodycam footage, Officer Sailor estimated that Mr. Gay got up within "half a second to a second" of falling.  Dkt. 379 at 197.  He testified that the gun was found approximately where Mr. Gay fell, close to "where his left hand would have went."  *Id.* at 131.  But this is undermined by the bodycam footage and Officer Sailor's own testimony that he did not see a gun along the flight path as he walked Mr. Gay back to the squad car, despite believing Mr. Gay had a gun when he first got out of the vehicle and not finding a weapon on Mr. Gay's person. The bodycam also captured footage of the area where the gun was recovered as Officer Sailor walked Mr. Gay along the flight path, but does not show a gun on the ground, or even show Mr. Gay fall.  Dkt. 379 at 152, *see id.* at 153.

The gun was processed for fingerprints and DNA, and there was no DNA or fingerprint evidence to connect Mr. Gay to the gun, despite Officer Sailor's testimony that the gun appeared "freshly placed."  *Id.* at 130–31.  While Mr. Kim's testimony provided possible explanations for the limited genetic material on the gun, it did not explain why "[t]here was a mixture of individuals in the profile." Dkt. 380 at 486. Instead, Mr. Kim confirmed that he had swabbed three different areas on the gun and found no DNA profile suitable for comparison.  *Id.* at 484–85.

As in *Morales*, even if Officer Sailor's version of events is not impossible, it is undermined by inconsistencies between his testimony, the bodycam footage,

and the lack of physical evidence.  The record does not support the required
conclusion that Mr. Gay is guilty beyond a reasonable doubt.  Instead, the
Government relied on circumstantial evidence resulting from the warrantless
search of Mr. Gay's hotel room, when asking the jury to bootstrap an inference
that Mr. Gay was in possession of the ammunition onto the circumstantial
evidence supporting possession of a firearm.  The interests of justice require that
Mr. Gay be granted a new trial without the admission of the unlawful evidence
seized on June 14, 2020, and the ability to present testimony relevant to his
defense, including the newly discovered expert evidence obtained after trial.

### C. In The Alternative, Section 922(g), As Applied, Violates The Second Amendment.

Under the principle of constitutional avoidance, this Court addresses non-
constitutional challenges before reaching issues that implicate the Constitution.
*See Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.,* 980 F.3d 1117, 1140 (7th
Cir. 2020), *cert. denied*, 142 S. Ct. 1400 (2022).  As shown in Section I, the
Government failed to prove Mr. Gay guilty of the firearm charge or Mr. Gay is
entitled to a new trial.  As shown in Section II, Mr. Gay is entitled to the same
relief as to the ammunition charge.  Were this Court to disagree, however, Mr.
Gay requests the Court to address whether Section 922(g), as applied, violates
the Second Amendment.

Mr. Gay requested that the district court find that the indictment violated
Mr. Gay's rights under the Second Amendment.  Dkt. 403 at 4–16.  Mr. Gay
argued that *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2131
(2022), replaced this Court's "means-end" test with the historical test, and

outlined the historical support for his position. Dkt. 403 at 4–16. The Government opposed the motion. Dkt. 410 at 11–18. The district court denied the relief, stating "[t]his issue has been decided time and again. This Court need not rehash the reasoning" that the Second Amendment did not extend to Mr. Gay as he was not a "law abiding, responsible citizen." Dkt. 412 at 4. The district court relied on *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019), and *Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022). The Court concluded that "[t]here may be a day where a certain type of felony finds its way into the exception category of the Second Amendment, but this isn't the day, this isn't the type of felony, and this isn't the defendant that will be the case." Dkt. 412 at 4.

Yet this may be the day and this may be the case. This Court recently recognized that the test the district court used in this case is no longer correct. At the time of Mr. Gay's trial, this Court and the other Circuits applied the two step "means-end" test to Second Amendment challenges to Section 922(g)(1). *See Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023). In *Atkinson*, this Court specifically referenced *Kanter v. Barr*, on which the district court relied. This Court held, however, that under *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2131 (2022), firearm restrictions, including Section 922(g), are to be evaluated under a different test:

> *Bruen* leaves no room for doubt: text and history, not a means-end analysis, now define the controlling Second Amendment inquiry. *See* 142 S. Ct. at 2131 (emphasizing that, although "judicial deference to legislative interest balancing is understandable—and elsewhere, appropriate—it is

not deference that the Constitution demands here [under the Second Amendment]").

*Atkinson,* 70 F.4th at 1020.

In addition, the Third Circuit's decision in *Range,* which the district court cited, was set aside by the Third Circuit *en banc.* 69 F.4th 96 (3d Cir. 2023), *petition for cert. filed*, No. 23-374 (U.S. Oct. 5, 2023).  The full court reevaluated the Second Amendment issue and held that, "despite his false statement conviction, [Range] remains among 'the people' protected by the Second Amendment." *Id.* at 98.  It rejected the argument that only "law-abiding, responsible citizens" are "people" within the Second Amendment.  *Id.* at 102–03.  The court concluded "the Government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support disarming Range." *Id.* at 98.  *See also United States v. Bullock,* No. 18-CR-165, 2023 WL 4232309, at *21 (S.D. Miss. June 28, 2023) (government must demonstrate that its felon in possession indictment is "consistent with the Nation's historical tradition of firearm regulation"), *appeal docketed,* No. 23-60408 (5th Cir. July 31, 2023).

Recognizing the complexity of the issue, this Court has likewise found the Second Amendment challenge to Section 922(g) is a substantial issue.  In *Atkinson,* where this issue had not been fully addressed by the lower court, the Court, remanded a civil lawsuit brought by a felon to invalidate the restriction for the historical evaluation that *Bruen* requires.  *Atkinson,* 70 F.4th at 1020.

On the authority of the *en banc* court in *Range*, Mr. Gay is entitled to relief. Yet Mr. Gay recognizes that the law on this topic continues to evolve and this Court may conclude, as it directed in *Atkinson*, that it requires greater analysis, which the district court did not undertake. In addition, the Supreme Court is expected to decide this Term another case involving the government's ability to restrict the possession of firearms. *See United States v. Rahimi*, 143 S. Ct. 2688 (2023) (set for argument November 7, 2023). Finally, the Government has petitioned for a writ of *certiorari* in *Range*, and the Respondent in that case has agreed certiorari should be granted. Brief for Respondent at 1–3, *Garland v. Range*, No. 23-374 (U.S. Oct. 18, 2023).

Should the Court find it necessary to reach whether restrictions on possession of firearms by felons violates the Second Amendment, Mr. Gay invites the Court to follow *Range* and reverse the conviction or to follow its course in *Atkinson*, vacate his conviction, and remand the case to the district court to address whether Section 922(g), as applied, violates the Constitution.

## II.    Mr. Gay Is Entitled To A New Trial, Or Alternatively Acquittal, On The Ammunition Charge.

The Government's evidence that Mr. Gay possessed ammunition was likewise thin to nonexistent. The only evidence the Government can point to is that a warrantless search revealed bullets hidden in Mr. Gay's hotel room. The evidence obtained in the warrantless search should be suppressed and Mr. Gay is entitled to a new trial. Alternatively, Mr. Gay is entitled to acquittal as the evidence was insufficient to support a finding of guilt on the ammunition charge. No testimony links that ammunition to Mr. Gay, and the scientific evidence is

29

similarly lacking.  This Court should correct these errors and set aside Mr. Gay's conviction.

### A. Mr. Gay's Conviction On The Ammunition Charge Rested On Evidence Obtained In An Illegal Search.

Mr. Gay had a reasonable expectation of privacy in his hotel room, which the Government violated by conducting a warrantless search.  The evidence obtained in that search should be excluded.  *Murray v. United States*, 487 U.S. 533, 536–37 (1988) (evidence obtained unlawfully should be excluded).

The renter of "a hotel room is entitled to constitutional protection" against warrantless, "unreasonable searches and seizures" and hotel personnel cannot consent to a search of the room unless the person's occupancy has been terminated for legitimate reasons.  *Stoner v. California*, 376 U.S. 483, 490 (1964); *United States v. Bass*, 41 F. App'x 735, 737–38 (6th Cir. 2002).  In *Bass*, a hotel manager called the police to the hotel after an employee saw a firearm and what he believed to be drugs in the defendant's vehicle.  41 F. App'x at 736.  After the defendant was arrested outside the hotel, the manager asked the police to search the defendant's hotel room. *Id.* at 736. The police recovered documents that led to an indictment for fraud in connection with identity theft and credit card fraud. *Id.* at 736–37.  The district court granted the defendant's motion to suppress the documents seized during the warrantless search of his hotel room, and the Sixth Circuit affirmed, holding that hotel management lacked authority to consent to the search of the defendant's room following his arrest, where the warrantless search of the room was not justified by exigent circumstances.  *Id.* at 738–40.

30

Here, it is undisputed that Mr. Gay had a legitimate expectation of privacy in the hotel room during his occupancy, which extended to June 15. "A reasonable expectation of privacy is present when (1) the defendant exhibits an actual or subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." *United States v. Amaral-Estrada*, 509 F.3d 820, 827 (7th Cir. 2007). The Government did not dispute that Mr. Gay had a legitimate expectation of privacy while he maintained the right to possess the room. *See* Dkt. 89 at 8. And at the hearing on Mr. Gay's motion to suppress, the district court acknowledged that Mr. Gay had a reasonable expectation of privacy in the hotel room until the rental period expired. Dkt. 311 at 172.

Mr. Gay's right to be free from warrantless searches of his hotel room did not end on June 1. It continued to June 15, 2020, the date after the Government performed a warrantless search. *See id.* at 178–79. On June 1, 2020, the hotel owner gave Mr. Gay an additional two weeks to leave his property in the room, to June 15, yet the warrantless search took place before that time period expired. In fact, although we do not know everyone who entered the room in the interim, the evidence showed that at least the Patels entered the room during that two week time period, the Rockford Police had a key, and the hotel operator did not remove Mr. Gay's property. In addition, Mr. Patel professed that no one other than Mr. Gay could enter the room without the police present, thereby acknowledging Mr. Gay's continuing right to control the premises.

These circumstances demonstrate that Mr. Gay continued to have a possessory interest in the premises through the time of the search. In *United*

*States v. Dorais*, 241 F.3d 1124 (9th Cir. 2001), the Ninth Circuit held that the defendant's occupancy of the hotel room was extended past the noon check-out time because the housekeeping staff did not tell the defendant or other guests to leave immediately at noon and the defendant told housekeeping staff that he planned to remain in the room until 12:30 p.m. *Id.* at 1127. The Ninth Circuit ultimately concluded the defendant no longer had a legitimate expectation of privacy because the challenged search took place after 12:30 p.m., but made clear that a hotel guest's expectation of privacy does not expire automatically at checkout time. *Id.* at 1129. Instead, the relevant inquiry was whether, based on the record, the defendant presented "sufficient evidence to meet his burden of proving that he held a reasonable expectation of privacy" in the room "*at the time of the search.*" *Id.* at 1129–30 (emphasis added).

Unlike the defendant in *Dorais*, whose expectation of privacy expired before the search, Mr. Gay's expectation of privacy had not expired at the time Officer Mendoza entered his hotel room on June 14, 2020. The Government asserts that Mr. Patel never actually extended the rental period, pointing to the receipt, which was generated after Officer's Mendoza search of the room, and Mr. Gay's remark that his "time was up" during the June 1, 2020 call with Mr. Patel. However, it is similarly undisputed that Mr. Patel told Mr. Gay on June 1, 2020 that he had an additional two weeks to collect his property. Like the defendant in *Dorais*, whose occupancy was extended by a communication with a hotel employee, Mr. Gay's occupancy was extended by the hotel operator as was made clear by Mr. Patel's testimony that only Mr. Gay (and, mistakenly, the police)

could enter his hotel room.  Mr. Patel's later testimony that he planned to move Mr. Gay's belongings into storage and charge Mr. Gay a storage fee does not alter Mr. Gay's expectation of privacy.  Nor is Mr. Patel's testimony consistent with what actually happened.  Mr. Patel did not remove Mr. Gay's belongings from the room during that fourteen-day period of extended occupancy.

The Government argues, in the alternative, that the warrantless search was still permissible because Mr. and Mrs. Patel may have "at least had apparent authority to consent to a search of the room."  Dkt. 89 at 11.  But this does not validate Officer Mendoza's search.  "[A]pparent authority . . . rests on the facts known to law enforcement at the time of the search, not those discovered later." *United States v. Thomas*, 65 F.4th 922, 926 (7th Cir. 2023).  Even if the Patels had authority to consent to the search, that authority was not apparent to Officer Mendoza at the time he conducted the search.  His testimony at the January 28, 2020 hearing refutes this argument, and the assertion that Mr. Gay's tenancy had expired.  Officer Mendoza understood Mr. Gay retained a reasonable expectation of privacy in the room. Officer Mendoza testified that on June 14, 2020, "[he] receive[d] a call from dispatch regarding a call" from the American Motor Inn.  Dkt. 311 at 141.  Upon his arrival, Mr. and Mrs. Patel explained that the hotel had rented a room to a guest from May 10, 2020 to June 1, 2020.  *Id.* at 141–42.  Officer Mendoza also recalled Mrs. Patel explaining that Mr. Gay had the room until June 1, 2020 and that "after two weeks they were going to get his belongings and store it for him[.]"  *Id.* at 144.  Thus, it was disclosed to the officer

that Mr. Gay had a continuing right to keep his belongings in the room.  At that

point, Officer Mendoza needed a warrant to conduct a search.

### B.  Mr. Gay Was Prejudiced By The Introduction Of Evidence Obtained In The Warrantless Search.

Despite knowing of Mr. Gay's possessory interest in the searched

premises, and without his consent, Officer Mendoza entered Mr. Gay's hotel

room without a warrant.  *See* Dkt. 311 at 145.  As a result, the Government

"bears the burden of demonstrating that [the search of the room] fit[] within an

exception to the warrant requirement." *United States v. Arch*, 7 F.3d 1300, 1302

(7th Cir. 1993).

The Government cannot demonstrate the existence of an exception to the

Fourth Amendment protection against unreasonable searches and seizures here.

There was no consent from Mr. Gay, no exigent circumstances, and no other

reason to search the premises.  As a result, the search was unlawful.  *Stoner*,

376 U.S. at 490.

The search resulted in evidence used at trial to support the Government's

case.  The Government used the products of the warrantless search to bootstrap

the gun possession charge and used the presence of the gun to bootstrap the

ammunition possession charge, although there was no admissible, direct

evidence supporting either charge.   Among other things, the Government

presented evidence at trial that some of the ammunition seized from the hotel

room was the same type of ammunition used in the gun recovered on May 31,

2020.  In closing, the Government argued "the reason that those two things were

the same is because they belong to the same person and that's the defendant."
Dkt. 381 at 773.

Mr. Gay was prejudiced by the unlawfully obtained evidence. In the absence of physical evidence or witness testimony directly connecting Mr. Gay to the firearm or to the ammunition, the Government relied on Special Agent Pessman's testimony that the ammunition in the hotel room was the same type found in the firearm. During closing argument, the Government asked the jury to infer Mr. Gay possessed the firearm based on the ammunition seized on June 14, 2020, and to infer Mr. Gay possessed the ammunition based on the firearm recovered on May 31, 2020, asserting the evidence "that the defendant is guilty beyond a reasonable doubt of being a felon in possession of a firearm and being a felon in possession of ammunition, [is] even stronger when you consider them together." Dkt. 381 at 772–73.

**C. At A Minimum, Mr. Gay Is Entitled To A New Trial.**

To remedy this violation, the Court should vacate the conviction on the ammunition charge and order a new trial without the taint of the unlawfully obtained evidence. *See Thomas*, 65 F.4th at 926; *United States v. Polequaptewa*, 858 F. App'x 225, 227 (9th Cir. 2021). Alternatively, the Court may reverse Mr. Gay's conviction, which does not rest upon sufficient evidence to sustain a conviction beyond a reasonable doubt. Excluding the evidence obtained in the warrantless search, the only evidence that Mr. Gay possessed ammunition is that bullets were found by the Patels in a dresser in a room that Mr. Gay occupied two weeks before the bullets were found. The room was not secure. We know

that the Patels entered the room—that is the only evidence of the bullets'
existence not obtained in the unlawful search.  We also know that during the
more than three weeks before the bullets were found, the Rockford Police had
key access to the room.  Mr. Gay complained to the police that officers had taken
his property—including his hotel key—and not returned it.  And without the
warrantless search, there was no evidence as to the caliber of the bullets, thus
undermining any claim that they matched the gun.  At best, the Government's
evidence is that bullets were found in a room to which Mr. Gay, and others, had
access.    As shown above, that is insufficient to support a conviction of
possession.  *See supra* II(b); *see also Thomas*, 321 F.3d at 636.

## III.  The District Court's Rulings Before The Second Trial Are Erroneous And Warrant A New Trial.

At the first trial, the court permitted Mr. Gay to present evidence
demonstrating that the gun was recovered in a "high service call area," where
police previously responded to calls of "shots fired."  Dkt. 334 at 549.  Mr. Gay
presented evidence that he previously had negative experiences with the Rock
Island Police which provided a plausible alternate explanation for walking away
from the police during the May 31 traffic stop and his reasons for wanting the
police to stay out of his hotel room.  Finally, he presented evidence that the Rock
Island Police previously seized the key card to his hotel room and were aware of
his complaints against the department regarding the May 23, 2020 interaction.
*Id.* at 566–68, 570–71.  The jury in the first case that heard all of this evidence
could not convict Mr. Gay of any charges.

36

Shortly before Mr. Gay's second trial, the district court ruled that key exculpatory testimony from the first trial would be excluded from the second trial.  The district court also ruled, over objection, that the new trial would take place on an expedited schedule.  These erroneous rulings prejudiced Mr. Gay and support vacating his conviction and conducting a new trial.

### A.  In Violation Of His Constitutional Rights, The District Court Erred In Preventing Mr. Gay From Presenting His Defense.

A defendant has a constitutional right to compel witnesses to testify in order to present a defense.  U.S. Const. amend. VI; *Washington v. Texas*, 388 U.S. 14, 19 (1967).  The Supreme Court explained in *Washington* that "the right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense."  388 U.S. at 19.  That right is fundamental, and  a criminal defendant has a right "to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law."  *Id.*  A trial court may not prejudge the impact of exculpatory evidence and exclude it from trial.  That is for the jury to consider, and a defendant may not be denied the right to call witnesses at trial.  *Id.* at 19–20.

This Court has cautioned against speculating what the effect of erroneously excluded evidence would have been and against finding the erroneous exclusion of evidence to be harmless.  *United States v. Peak*, 856 F.2d 825, 835–36 (7th Cir. 1988).  Particularly when erroneously excluded evidence would have been the only or primary evidence in support of or in opposition to a claim or defense, its exclusion is deemed to have had a "substantial" effect on the jury.  *Id.*; *see also United States v. Cerro*, 775 F.2d 908, 916 (7th Cir. 1985)

("If the defendant were utterly precluded from defending himself, it would be clear that his conviction had to be reversed *even if the evidence of guilt was overwhelming* and could not have been offset by the evidence that the defendant would have introduced if allowed to do so.") (emphasis added).

Yet that is what happened here. In a close case, the district court excluded Mr. Gay's defense case. Especially in light of the circumstantial nature of the Government's case, evidence supporting a plausible explanation as to why a gun was found where it was found, why Mr. Gay sought to avoid contact with the police and therefore behaved as he did, and how the ammunition could be from another source, Mr. Gay had the right to call witnesses to present his defense

### 1. The District Court Erred In Excluding Evidence Relating To Mr. Gay's May 23, 2020 Encounter With The Rock Island Police Department.

During the April 27, 2022 status conference, the district court announced that it would exclude from the second trial all evidence regarding Mr. Gay's May 23, 2020 encounter with the Rock Island Police, including testimony from Officer Gable and State's Attorney Villarreal. Dkt. 306. As Mr. Gay explained in his motion to reconsider, Officer Gable would testify to the events of May 23, 2020. *See* Dkt. 312. On that date, Mr. Gay was detained by Rock Island Police officers responding to a call that shots had been fired at Mr. Gay and his family members. He was not placed under arrest, but Officer Gable testified at the first trial that he seized Mr. Gay's hotel key card, cell phones, a debit card, and cash from Mr. Gay on May 23, 2020. Dkt. 334 at 566–67, 571. Officer Gable admitted that

Mr. Gay asked him to return the key card, and confirmed that none of the items were returned.  *Id.* at 570, 567.

State's Attorney Villarreal was expected to testify to Mr. Gay's complaints against the Rock Island Police.  Ms. Villarreal testified during the first trial that she received at least three reports of Mr. Gay's complaints, including a call from Amy Blommer, a June 9, 2020 email exchange from Rock Island County Jail, and another email in late June 2020 from Mr. Gay.  *Id.* at 593–94, 595–97.  She also testified that she spoke to at least one detective at the Rock Island Police Department about Mr. Gay raising these complaints.  *See id.* at 601.

Officer Gable's and State's Attorney Villarreal's testimony during the first trial established that Mr. Gay had experienced a recent negative encounter with the police at the time of his May 31 arrest; and that the Rock Island Police Department seized Mr. Gay's property, including a key card with access to Mr. Gay's room at the American Motor Inn, just one week before that arrest and three weeks before the ammunition was recovered on June 14, 2020.  He presented complaints following the May 23, 2020 interaction and his May 31, 2020 arrest; and at least some of these complaints were communicated to the Rock Island Police Department.

This Court does not need to speculate as to what that testimony would show, as the testimony was admitted in the first trial.  It was material and exculpatory.  Collectively, this evidence demonstrates potential animus against Mr. Gay by the Rock Island Police Department, which supports two inferences. First, it explains why Mr. Gay fled the pretextual traffic stop, and did not want

the police in his hotel room, conducted only eight days after Mr. Gay's prior encounter with the Rock Island Police Department and only five days after the police murder of George Floyd.  He had recent, negative experiences with the Rock Island Police which ended with the police taking things from him which they refused to return.  Second, it provides an alternative reason for the testimony that officers found a gun that was not visible to the naked eye or on the bodycam video.  They were upset with Mr. Gay, who had complained about them.  By excluding not only Officer Gable's and Ms. Villarreal's testimony, but *any* reference to the May 23, 2020 detention, the district court prevented Mr. Gay from providing the jury with a plausible alternative explanation for the gun recovered on May 31, 2020, the ammunition seized on June 14, 2020, and Mr. Gay's attempts to avoid further contact with the police. Thus, the excluded evidence directly refutes the Government's arguments in support of its inferential, circumstantial case.

The district court exacerbated its error at trial. The district court permitted the Government to ask Amy Blommer on cross-examination if Mr. Gay told her to "hold off" retrieving his property from American Motor Inn when the Patels insisted that the police  accompany her.  Dkt. 381 at 701–03.  However, when Mr. Gay attempted to question Ms. Blommer on redirect regarding her awareness of Mr. Gay's reasons for not wanting the police to enter his room, which stemmed from the May 23 incident, the district court ruled it was "not opening [the door] again." *Id.* at 704–05.  Despite allowing the Government to introduce testimony to support its theory that Mr. Gay attempted to conceal ammunition in his hotel

room, the district court denied Mr. Gay the opportunity to present evidence explaining why he did not want the police in the room.  *Id.*

Exclusion of this evidence deprived Mr. Gay of a fair trial.  As noted above, Mr. Gay had a constitutional right to present a defense.  U.S. Const. amend. VI; *Washington v. Texas*, 388 U.S. at 18–19.  That right includes the ability to present relevant, exculpatory evidence.  The trial court is not allowed to prejudge or evaluate that evidence as that is for the jury to consider, and a defendant may not be denied the right to call witnesses at trial.  *Washington*, 388 U.S. at 19–20. Trial judges may not speculate about the evidence.  A defendant is entitled to prove a reasonable hypothesis supporting a not guilty verdict.

### 2.  The District Court Erred In Excluding Testimony From Officer Jason Foy.

No witness testified that the seized gun was ever in Mr. Gay's possession. Instead, the Government asked the jury to infer that the gun the officers found on the ground had been in Mr. Gay's possession.  Evidence that the gun could have been present in that public area for other reasons supported Mr. Gay's defense and refuted the Government's circumstantial case.

In the first trial, Mr. Gay presented Officer Foy's testimony that the area where the gun was recovered was a "high service call area[.]"  Dkt. 334 at 549. Officer Foy testified during that trial that there had been "quite a few" service calls in 2020 for the address where the gun was found, including calls to report "shots fired" or requesting ambulance assistance.  *Id.* at 549–50, 553.  As Mr. Gay explained during the second trial and in his consolidated post-trial motions, this testimony was relevant to Mr. Gay's defense and supported an alternative

explanation for the gun recovered on May 31, 2020.  Dkt. 403 at 2–4.  This testimony supported a plausible alternate explanation for the location of the gun, and undermined the Government's theory that Mr. Gay dropped or tossed the gun when running from Officer Sailor.

Before the second trial, the district court ruled that Mr. Gay could not call Officer Jason Foy to testify on the number of service calls received regarding the address where the gun was found.  *See* 05/16/2022 Minute Entry.  At the beginning of the second trial, the district court briefly addressed Mr. Gay's motion for reconsideration, saying only that: "Foy is not necessary [to Mr. Gay's defense]."  Dkt. 379 at 24.  In its later order denying Mr. Gay's consolidated post-trial motions, the district court presented a different reason for its decision to exclude testimony from Officer Foy: "To the extent [Mr.] Gay wanted to establish this was a high crime area, he could have done so through Detective Whitcomb. He chose not to."  Dkt. 412 at 3, A18.

The district court's reason for excluding this evidence is insufficient. Testimony is not cumulative or inadmissible because a different witness *could* have provided similar testimony during the second trial.  The testimony Mr. Gay sought to introduce through Officer Foy was not presented to the jury—there was nothing cumulative about the testimony Mr. Gay sought.  Nor was it the trial judge's prerogative to tell Mr. Gay what witnesses to call.  Both Detective Whitcomb and Officer Foy testified during the first trial.  Based on his experience with the witnesses, Mr. Gay was entitled to exercise his judgment as to which witness would better communicate the point he wanted to present.  That was

not a call for the district court judge to make.  And, in the brief second trial, there was no prejudice to the interests of justice to call a witness to testify on an exculpatory theory.

Mr. Gay notes that the district court did not apply a similar approach to cumulative testimony that prejudiced Mr. Gay.  As part of its case, the Government had to prove Mr. Gay was a felon, to which Mr. Gay did not stipulate. Unlike in the case of Officer Foy, where the court justified its exclusion of the testimony on the ground that it was cumulative of testimony that could be obtained from Detective Whitcomb, an argument the Government did not make, the district court permitted the Government to present testimony from two different witnesses and proof of four prior felony convictions, where one would have been sufficient to carry the Government's burden.  Dkt. 380 at  227–30, 237–38, 240–41.

### 3.  The Exclusion Of Defense Witnesses Prejudiced Mr. Gay.

In *United States v. Peak*, this Court emphasized the "substantial difference between having *some* evidence and having *no* evidence to support a defense especially in light of the less than overwhelming evidence."  856 F.2d at 835. Notably, the district court in *Peak* excluded the only evidence to support the accused's sole defense, so that despite the prosecution's "less than overwhelming evidence" against him, the defendant "had little chance of acquittal" without it. *Id.*  Here, the Government's case relies entirely on circumstantial evidence, but the district court's decision to exclude Officer Foy's testimony, combined with

43

the exclusion of any reference to the events of May 23, 2020, similarly prevented the jury from considering *any* evidence in support of Mr. Gay's defense.

Even where there is strong forensic evidence of guilt, a meaningful opportunity to present a complete defense includes the opportunity to present evidence not only of a criminal defendant's innocence, but the guilt of a third party. *Holmes v. South Carolina*, 547 U.S. 319, 319–20 (2006). In *Holmes*, during the defendant's trial for murder and related crimes, the prosecution relied heavily on forensic evidence, as well as circumstantial evidence that the defendant was seen near the victim's home around the time when the attack took place. *Id.* at 322. The defendant introduced expert testimony challenging the police procedures used to collect the forensic evidence, arguing the forensic evidence "had been contaminated and that certain law enforcement officers had engaged in a plot to frame him." *Id.* at 322–23. The defendant also sought to introduce evidence that a third party had attacked the victim. *Id.* at 323. The trial court excluded the defendant's third-party guilt evidence, and the state supreme court affirmed, holding that where there was strong forensic evidence of the defendant's guilt, proffered evidence that "merely 'cast a bare suspicion upon another'" or "raise[d] a conjectural inference as to the commission of the crime by another" was not admissible. *Id.* at 323–24. The Supreme Court held that the trial court's exclusion of evidence of "third-party guilt" denied the defendant a fair trial, explaining:

> [T]he true strength of the prosecution's proof cannot be assessed without considering challenges to the reliability of the prosecution's evidence. Just because the prosecution's evidence, *if credited*, would provide strong

> support for a guilty verdict, it does not follow that evidence of third-party
> guilt has only a weak logical connection to the central issues in the case.
> And where the credibility of the prosecution's witnesses or the reliability
> of its evidence is not conceded, the strength of the prosecution's case
> cannot be assessed without making the sort of factual findings that have
> traditionally been reserved for the trier of fact and that the South Carolina
> courts did not purport to make in this case.

*Id.* at 330.

Here, there was no forensic evidence to connect Mr. Gay to either the firearm or the ammunition. The Government evidence, if credited, provided only weak circumstantial support for a guilty verdict. And unlike the defendant in *Holmes*, who was able to present evidence of a plot to frame him, Mr. Gay was precluded from introducing a plausible alternate explanation for the location of the gun, the location of the ammunition, his behavior during the later May 31 traffic stop, *and* his reasons for wanting the police to stay out of his hotel room. The district court's decision to exclude Officer Foy's testimony and any reference to the events of May 23, 2020, allowed the jury to evaluate the strength of the Government's evidence only and denied Mr. Gay a meaningful opportunity to present a complete defense.

### B.  The District Court Erred In Expediting The Retrial.

While district courts generally are afforded great discretion regarding trial procedure applications including control of the docket and parties, courts must balance the right to manage trials against the potential for serious constitutional violations if unreasonable limitations are imposed on a defendant's opportunity to defend against the charges. *E.g.*, *United States v. Schneider*, 594 F.3d 1219,

1230 (10th Cir. 2010); *United States v. Janati*, 374 F.3d 263, 273–74 (4th Cir. 2004).

Here, the district court set an unreasonably short period of time to conduct a retrial, then *sua sponte* advanced the date of the second trial by two weeks, and finally, it upset Mr. Gay's ability to present a defense by excluding the primary evidence Mr. Gay introduced at the first trial to support his defense. Even if different witnesses *could* have provided similar testimony to the evidence excluded by the district court, the district court's decision to advance the second trial date precluded Mr. Gay from preparing a complete defense based on entirely different witnesses.

A trial court's discretion to manage its courtroom is not without limits.  In *Lowe v. City of East Chicago*, this Court held that denial of a civil rights plaintiff's motion for continuance and dismissal of the action with prejudice was an abuse of discretion.  897 F.2d 272, 275 (7th Cir. 1990).  In *Lowe*, the plaintiff's attorney told him that "the case had not been set for trial and probably would not be until August 1989." *Id.* at 273. When the plaintiff discovered a trial date had been set for March 20, 1989 and his attorney had done little to prepare for the case, he asked his attorney to withdraw and file a motion for continuance. *Id.*  His attorney did not file a motion to withdraw until February 28, and the plaintiff was unable to find another attorney to represent him until his prior counsel had withdrawn.  *Id.*  On March 20, the trial court allowed the plaintiff's attorney to withdraw, but declined to grant a continuance, giving the plaintiff a choice between proceeding to trial the next day or voluntarily dismissing the case with

prejudice. *Id.* at 273–74. This Court reversed and reinstated the action, noting the difficulty in getting the primary witnesses—who were in jail—to court and the absence of a clear record of delay. *Id.* at 274–75. Here, Mr. Gay himself was subject to home monitoring, faced similar difficulties in preparing for the second trial, and was denied assistance of standby counsel.

This is not like a case in which a continuance was properly denied, such as *United States v. Dickey*, 52 F.4th 680, 686 (7th Cir. 2022). In *Dickey*, the defendant sought repeated continuances. Here, it was the court that advanced the date of the retrial. In *Dickey*, the continuance was sought due to defendant's repeated changes in position and her delay in investigating potential witnesses. In this case, it was the district court that dramatically changed Mr. Gay's theory of defense by excluding defense witnesses and then advanced the trial date. In *Dickey,* the defendant raised issues about the conduct of her counsel, including filing an ethics complaint. She retained competent new counsel who the court found was able to prepare the case adequately. Here, Mr. Gay proceeded *pro se*, without standby counsel. While the court's trial scheduling is a matter of discretion, here the factors demonstrate the district court's precipitous retrial was erroneous.

## IV.    The District Court Erred In Denying Mr. Gay's Motion For A New Trial Based On Newly Discovered Evidence.

In seeking a new trial based on newly discovered evidence, the defendant must demonstrate that the new evidence: "(1) was discovered after trial, (2) could not have been discovered sooner through the exercise of due diligence, (3) is

material and not merely impeaching or cumulative, and (4) probably would have led to acquittal." *United States v. O'Malley*, 833 F.3d 810, 813 (7th Cir. 2016).

Mr. Gay first located an expert witness, Adam Dew, to review Officer Sailor's bodycam footage after the second trial, and Mr. Dew completed his analysis of the video in January 2023. *See* Dkt. 428. Mr. Gay timely filed his motion for new trial under Rule 33. Fed. R. Crim. P. 33(b)(1) (motions "grounded on newly discovered evidence" be filed within three years after the verdict).

Contrary to the Government's argument at the sentencing hearing, nothing prohibits expert analysis of previously disclosed evidence from being considered. Mr. Dew, who is an expert in the field of videography, would have explained how he enhanced the video and what the video shows. This evidence could not have been discovered with due diligence in the four-week pretrial period between the first trial and the expedited second trial. Dkt. 379 at 10. The Government argued there was "absolutely no reason the defendant could not have obtained it during the approximately 21 months this case was awaiting trial." Dkt. 433 at 6. However, as Mr. Gay explained in his motion for new trial, the need for enhanced video evidence only became apparent during the first trial, when Officer Sailor testified to reasons why the video would not show a gun on the ground. Dkt. 428 at 4–6. Unlike the defendant in *United States v. Thomas*, 396 F. Supp. 3d 813, 830–32 (N.D. Ind. 2019), Mr. Gay is not offering a new expert opinion to *rebut* the state's expert witness.

The Government relies on *United States v. Kamel*, 965 F.2d 484 (7th Cir. 1992), to argue Mr. Gay was not sufficiently diligent. Dkt. 433 at 5. This reliance

is misplaced.  In *Kamel*, the defendant "undertook little or no effort, prior to his trial, to obtain the evidence."  *Id.* (*quoting Kamel*, 965 F.2d at 493).  In the four weeks between the first and second trials, Mr. Gay requested standby counsel and a continuance to allow him to prepare for trial.  *See* Dkts. 318; 343.  The district court denied both requests.  Dkt. 338 at 13–16; Dkt. 379 at 10, 12; *see also* 05/09/2022 Minute Entry. The expedited retrial also meant that Mr. Gay had at most four weeks to locate and retain an expert, proceeding *pro se*, at a distance, and without standby counsel.  Moreover, at that time Mr. Gay had to deal with the trial court's other rulings eliminating his previously admitted defense witnesses.

The newly discovered evidence is material because Mr. Dew's testimony and the enhanced video are both independently exculpatory.  Officer Sailor testified in both trials that he did not see a gun when walking Mr. Gay past the area where the gun was later recovered.  The new expert testimony shows Officer Sailor did not see a gun where it was later recovered not because of the low video quality and lighting, but because it was not there.

## CONCLUSION

For the forgoing reasons, this Court should reverse Mr. Gay's conviction. In the alternative, the Court should vacate the conviction and remand the case for a new trial.

Dated: October 19, 2023                    Respectfully submitted,

                                           ANTHONY GAY

                                           By: <u>Michael T. Brody</u>

Michael T. Brody
   *Counsel of Record*
Reanne Zheng
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com
rzheng@jenner.com

*Counsel for Defendant-Appellant
Anthony Gay*

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, according to the word count function of Microsoft Office Word 365, this brief contains 13,902 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12 point Bookman Old Style for the main text and 11 point Bookman Old Style for the footnotes.

Dated: October 19, 2023

/s/ Michael T. Brody
Michael T. Brody

## CERTIFICATE RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), I, Michael T. Brody, an attorney, certify that all materials required by Circuit Rule 30(a) are included in Defendant-Appellant's Required Short Appendix.

Dated: October 19, 2023

/s/ Michael T. Brody
           Michael T. Brody

**CERTIFICATE OF SERVICE**

I, Michael T. Brody, an attorney, hereby certify that on October 19, 2023, I caused the **Brief And Required Short Appendix Of Defendant-Appellant Anthony Gay** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause fifteen (15) copies of the above-named brief to be transmitted to the Court via UPS overnight delivery, delivery charge prepaid, within five days of that date.

/s/ Michael T. Brody
Michael T. Brody

## INDEX OF REQUIRED SHORT APPENDIX OF
## DEFENDANT-APPELLANT ANTHONY GAY

Judgment in a Criminal Case
 (May 25, 2023) (Dkt. 436) ....................................................................A1

Transcript of Sentencing Hearing Before the Honorable
 James E. Shadid
 (May 23, 2023) (Dkt. 453) (excerpt) ......................................................A7

Order on post-trial motions
 (Dec. 5, 2022) (Dkt. 412)....................................................................A16

Order on motion to suppress
 (Feb. 4, 2022) (Dkt. 227) ....................................................................A21

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Central District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Anthony Tony Gay | Case Number:  20-CR-40026-001 |
| | USM Number:  23170-026 |
| | Jennifer Soble |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☑ was found guilty on count(s)  1 & 2
  after a plea of not guilty.

FILED
MAY 2 5 2023
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 922(g), 924 (a)(2), and 924(e) | Felon in Possession of a Firearm | 5/31/2020 | 1 |
| 18 U.S.C. § 922(g), 924(a) (2), and 924(e) | Felon in Possession of Ammunition | 6/14/2020 | 2 |

  The defendant is sentenced as provided in pages 2 through ___6___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

  It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

5/24/2023
Date of Imposition of Judgment

s/James E. Shadid

Signature of Judge

James E. Shadid
Name and Title of Judge

5/25/23
Date

**A1**

AO 245B (Rev. 09/17)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:  Anthony Tony Gay
CASE NUMBER:  20-CR-40026-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

84 months. Said sentence shall consist of 84 months on each count to be served concurrently.

☑  The court makes the following recommendations to the Bureau of Prisons:

It is recommended that the defendant serve his sentence in a facility as close to his family in Rock Island, Illinois, as possible, specifically, FCI Terre Haute. It is further recommended that he serve his sentence in a facility that will maximize his exposure to educational and vocational opportunities. Furthermore, it is recommended that the defendant serve his sentence in a facility that will afford him the opportunity to receive the mental health treatment recommended in the BOP evaluation.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____  ☐ a.m.  ☐ p.m.  on _____.

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**A2**

AO 245B (Rev. 09/17)    Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:   Anthony Tony Gay
CASE NUMBER:   20-CR-40026-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

3 years. Said sentence shall consist of 3 years on each count to be served concurrently.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

1. You must not commit another federal, state or local crime.

2. You must not unlawfully possess a controlled substance.

3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the following conditions:

1. You shall not knowingly leave the federal judicial district without the permission of the court or probation officer.

2. You shall report to the probation office in the district to which you are released within 72 hours of release from custody. You shall report to the probation officer in a reasonable manner and frequency directed by the court or probation officer.

3. You shall follow the instructions of the probation officer as they relate to your conditions of supervision. Any answers you give in response to the probation officer's inquiries as they relate to your conditions of supervision must be truthful. This condition does not prevent you from invoking your Fifth Amendment privilege against self-incrimination.

4. You shall notify the probation officer at least ten days prior, or as soon as knowledge is gained, to any change of residence or employment which would include both the change from one position to another as well as a change of workplace.

5. You shall permit a probation officer to visit you at home or any other reasonable location between the hours of 6 a.m. and 11 p.m., unless investigating a violation or in case of emergency. You shall permit confiscation of any contraband observe in plain view of the probation officer.

6. You shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

7. You shall not knowingly possess a firearm, ammunition or destructive device as defined in 18 U.S.C. § 921(a)(4) or any object that you intend to use as a dangerous weapon as defined in 18 U.S.C. § 930(g)(2).

8. You shall not purchase, possess, use, distribute, or administer any controlled substance or psychoactive substances that impair physical or mental functioning except as prescribed by a physician. You shall participate in a program for substance abuse treatment as approved by the U.S. Probation Office including not more than six tests per month to determine whether you have used controlled substances. You shall abide by the rules of the treatment provider. You shall pay the costs of the treatment to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the court's review upon request.

9. You shall participate in psychiatric services and/or a program of mental health counseling/treatment as approved by the U.S. Probation Office and shall take any and all prescribed medications recommended by the treatment providers. You shall pay the costs of the treatment to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the court's review upon request.

**A3**

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

|  | Judgment—Page | 4 | of | 6 |
|---|---|---|---|---|

DEFENDANT:  Anthony Tony Gay
CASE NUMBER:  20-CR-40026-001

## ADDITIONAL SUPERVISED RELEASE TERMS

10. You shall, at the direction of the U.S. Probation Office, participate in and successfully complete a therapy program as approved by the U.S. Probation Office. You shall pay the costs of the program to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the court's review upon request.

11. You shall attempt to obtain a GED within the first 12 months of supervision, if you have not already obtained one while in custody.

12. You shall attempt to secure regular and lawful employment, unless excused by the probation office for schooling, training, or other acceptable reasons, and the probation office shall take into account the defendant's mental health issues and the fact that he may receive Social Security Disability Income. You shall keep the probation officer advised of any changes in your employment status.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

A4

AO 245B (Rev. 09/17)    Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Case 20-2057    Document: 26    Filed: 10/19/2023    Pages: 86

| | | | | Judgment — Page | 5 | of | 6 |

DEFENDANT: Anthony Tony Gay
CASE NUMBER: 20-CR-40026-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **JVTA Assessment\*** | **Fine** | **Restitution** |
|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A5

AO 245B  (Rev. 09/17) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page   6   of   6

DEFENDANT:  Anthony Tony Gay
CASE NUMBER:   20-CR-40026-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $  200.00  due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate
Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
    The Court orders the defendant to forfeit all firearms, magazines, and ammunition involved in the commission of the
offense, including, but not limited to, the firearms and ammunition identified in the Indictment.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine
interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

A6

```
 1                   UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF ILLINOIS
 2

 3   UNITED STATES OF AMERICA,)
                              )
 4              PLAINTIFF,    )
                              ) CRIMINAL ACTION
 5         VS.                ) FILE NO. 4:20-cr-40026
                              )
 6                            )
     ANTHONY TONY GAY,        ) TRANSCRIPT OF SENTENCING
 7                            )
                DEFENDANT.    )
 8   _____)

 9

10

11           BEFORE THE HONORABLE JAMES E. SHADID

12              Tuesday, May 23, 2023, 9 a.m.

13               Peoria, Illinois 61602

14

15

16

17

18

19           DEBRA M. THORNBURG, CSR, RPR, CRR
                FEDERAL OFFICIAL COURT REPORTER
20                 UNITED STATES COURTHOUSE
                     100 NE Monroe Street
21                 PEORIA, ILLINOIS 61602

22

23   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED BY CAT

24

25
```

A7

1  important part of our legal team and has important

2  contributions to make and will have them during the course of

3  the hearing.

4          THE COURT:  I don't doubt that he's -- that he will

5  have thoughtful contributions to make.  I think in the

6  exercise of safety, though, for not just him but also you at

7  counsel table, even though there's been no incidents

8  previously of harming anybody like you, I think we're going to

9  play it safe.  We need to get through the day.

10          I'll give you plenty of opportunities to take breaks

11  and have conversations with him if need be and for him to

12  relay any conversation to you as he needs to.  But for the

13  request to not be cuffed, under the circumstances, I'll

14  respectfully deny that.  Thank you.

15          (Following proceedings held in open court)

16          THE COURT:  Thank you.  Please be seated.  Okay.

17  With that in mind, is there anything else to address before we

18  hear the motion for new trial?

19          MS. SOBLE:  No, your Honor.

20          THE COURT:  Okay.  Argument as to the motion for new

21  trial as set forth in Docket No. 428?

22          MS. SOBLE:  Your Honor, Mr. Gay presents his motion

23  for new trial.  The evidence attached by way of affidavit and

24  expert opinion to that motion introduces -- propose the

25  introduction of evidence that is not cumulative, that is newly

1    discovered and that is material, that was obtained through due

2    diligence.  Contrary to the case law cited by the Government,

3    there is very good reason Mr. Gay was not able to produce that

4    evidence prior to the second trial.

5            The timeline between the first trial and the second

6    trial was extraordinarily truncated, a matter of weeks.  Mr.

7    Gay asked for a continuance, which was denied, and the

8    timeline of that, especially in light of the fact that Mr. Gay

9    was representing himself pro se, more than sufficiently

10   explains why he was unable to develop that evidence until

11   after the first trial.

12           However, the evidence is not merely cumulative.  Mr.

13   Dew, who is an expert in the field of videography, will

14   explain to the jury in a way that is new how he enhanced the

15   video and what that enhanced video shows.  It's not

16   cumulative.  Although it does impeach Officer Sailor's

17   testimony, it is independently exculpatory insofar as it shows

18   there was no item on the ground in the flight path where

19   Officer Sailor says he later discovered an item.

20           Mr. Gay is bringing that evidence in a timely

21   fashion.  I understand the Government objects to the few

22   months that passed between Mr. Dew's affidavit and the filing

23   of that motion.  As this Court is well aware, Mr. Gay's case

24   is not only very complicated but involves facts and legal

25   nuances that are not apparent in most cases, I will say, to

1   put it mildly, so for those reasons, because the evidence is

2   both exculpatory evidence and material and because Mr. Gay

3   discovered it after exercising due diligence throughout the

4   entire pretrial period, we'd ask that the Court grant his

5   motion for new trial.

6           THE COURT:  When was Mr. Dew first retained?

7           MS. SOBLE:  I believe he was retained after Mr. Gay

8   was incarcerated.

9           THE COURT:  And who first contacted Mr. Dew?

10          MS. SOBLE:  Mr. Gay.

11          THE COURT:  Okay.  All right.

12          Mr. Mehochko, Ms. Mathew?

13          MR. MEHOCHKO:  Judge, our response is set out in the

14  written response, but the relevant timeline here is not the

15  time between the first trial and the second trial.  It is the

16  time from when this case was charged, which was approximately

17  20-something months.  To say that the defendant just realized

18  this video was important after the first trial strains

19  credibility, given his litigation approach throughout the

20  case.

21          So first of all, as to the due diligence question,

22  there appears to have been none here.  He does not appear to

23  have even attempted to retain this expert until after the

24  second trial was concluded and he was in custody.  As to the

25  evidence itself, we have no evidence.  We have really a

1    one-page affidavit if you take the header out, the caption out

2    of the first page, of an individual who says he enhanced it

3    using unspecified means.

4        He viewed it and was unable to see a firearm.  That

5    is not particularly persuasive.  It's not evidence.  It's one

6    person's opinion about what they saw in the video.  It doesn't

7    even qualify as an expert opinion.  There's no -- it is really

8    like a one-sentence -- one relevant sentence or one relevant

9    paragraph saying he took the video.  He enhanced it with some

10   unspecified means, and he wasn't able to see a gun.  He didn't

11   say -- I want to make this clear.

12       Counsel said it showed there was not a gun in the

13   flight path.  That's not what he said.  He said he couldn't

14   see a gun in the flight path, and as we said in our response,

15   given the time of night, this was around midnight, it was on a

16   body camera with challenging lighting conditions, moving

17   around.  The officer and the defendant were backlit as they

18   were walking back towards the alley, and the location where

19   the gun was ultimately located was covered by the shadows that

20   were thrown across the area.

21       It's not surprising at that time at all that

22   someone's not able to see the firearm on the ground.  You

23   wouldn't expect to see the firearm on the ground.  That

24   doesn't establish anything.  It's certainly the Government's

25   opinion it's not evidence, but to the extent it can be

A11

1  considered evidence, it's not sufficient to lead to a probable

2  acquittal, so it fails under the standards set out by the 7th

3  Circuit and, again, I'll go back to the timing.

4         If this evidence was so compelling, we've yet to see

5  a video.  We've yet to see any photos.  We've seen nothing

6  other than a two-page affidavit of somebody who says I can't

7  see a gun.  If it was so compelling, I don't know why we're

8  hearing about it the Friday before the sentencing when this

9  defendant's been in custody this entire time that has been an

10  issue throughout this case, and for him to sit on this

11  evidence that he claims would lead to an acquittal for four

12  months just doesn't fit with the description of the evidence,

13  I would say.

14         It doesn't fit with the way in which it was handled,

15  so the fact that we're just now hearing about it, the fact the

16  defendant apparently didn't pursue it during the entire time

17  this case was pending and the fact that it really isn't

18  evidence at all leads the Government to conclude that the

19  Court should deny the motion.

20         THE COURT:  Ms. Soble?

21         MS. SOBLE:  Yes, your Honor.  It became clear during

22  the course of the first and then the second trial that the

23  evidence -- that the video evidence was going to be at issue

24  in a way that Mr. Gay had not anticipated, and if the Court

25  recalls, that video evidence was played over his objection.

1    And by video, I'm talking about Officer Sailor's body camera

2    footage.

3            Officer Sailor made this enhanced video an issue

4    when he testified about all the reasons why you would expect a

5    gun to not appear in body camera footage.  That's what made

6    this video evidence an issue.  That's what made it material

7    and exculpatory, especially in light of Officer Sailor, who is

8    the only person who testified that they found a gun on the

9    ground, that he saw this and it was his body camera footage,

10    if I'm correct.

11            So the necessity for this evidence was not apparent

12    until the first trial and, again, the timeline between the

13    first and second trial was extraordinarily short, giving Mr.

14    Gay insufficient time to pursue much of anything.  I'll remind

15    the Government that although there was 20 months between the

16    first -- Mr. Gay's arrest and the first trial, that those were

17    an unusual 20 months in this world history.  The entire time

18    period was defined by COVID.  Mr. Gay had very serious

19    restrictions on his movement on top of the COVID risks and

20    sort of worldwide panic that was related to the COVID

21    pandemic.

22            I'll note that this is not some random person's

23    testimony that a gun is not visible in the body camera

24    footage.  Mr. Dew is an expert who has been recognized by the

25    federal courts before.  He explained that he as an expert

1   enhanced the video and what he would expect to see if a gun

2   were on the ground.  There was no gun on the ground, so it's

3   not simply that Mr. Dew as a layperson watched a video and

4   didn't see anything.

5          Mr. Dew enhanced the video, which is his area of

6   expertise and area of expertise has been recognized by the

7   federal courts before and using the enhanced video no gun was

8   apparent.  That evidence not only directly contradicts Officer

9   Sailor's testimony, as a reminder, Officer Sailor testified at

10  length about why one wouldn't expect to see a gun in the

11  footage even though a gun was there, but is independently

12  exculpatory evidence independent of evidence no gun was on the

13  ground.

14         Brief indulgence, your Honor?

15         Thank you.

16         THE COURT:  The Court has read the motion, heard the

17  response of counsel now and would just comment that I don't

18  believe this is newly discovered evidence.  The proposed

19  expert may be new to the case, but the evidence isn't.  The

20  body cam has been available from the beginning of discovery

21  for review by parties and experts if the parties had chosen to

22  consult with one.

23         So it wasn't that the body cam was discovered after

24  the trial as newly discovered evidence.  The expert report

25  goes to the credibility of the officers involved.  Mr. Gay was

1    given every opportunity to challenge the credibility of the

2    witnesses in his cross-examination.  He, as you point out,

3    objected to the body cam.  The jury was instructed to weigh

4    the credibility of the witnesses.

5            I can't accept that it makes it newly discovered

6    because Mr. Gay did not anticipate that this would be used in

7    the way it was used or however you phrased it.  Mr. Gay chose

8    to represent himself.  That was a strategy decision that he

9    made to do so.  The availability of the body cam and the

10   decision to represent himself does not now make this newly

11   discovered and certainly doesn't rise to the level of probably

12   would have led to an acquittal either.

13           In addition, I might add if it was that simple to

14   meet the factors of newly discovered evidence, then in every

15   case after a party has been unsuccessful, they could find an

16   expert to support their position, and I don't believe that

17   rises to the level of newly discovered, so the Court will

18   respectfully deny the motion for new trial.

19           With that in mind, are there any other post-trial

20   motions to address before we proceed to the sentencing phase

21   of this?

22           MS. SOBLE:  No, your Honor.

23           THE COURT:  Okay.  Presentence report was ordered

24   and has been prepared, and it appears that the parties have

25   received the same and there are a number of objections that we

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cr-40026-JES-JEH-1 |
| | ) | |
| ANTHONY TONY GAY, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

This matter is now before the Court on Defendant Anthony Gay's Post-Trial Motions (Doc. 403) and the Government's Response (Doc. 410). On May 19, 2022, the jury found Anthony Gay guilty on one count of knowingly possessing a firearm (Count I) and one count of possession of ammunition (Count II) after having been convicted of a crime punishable by a term of imprisonment exceeding one year.

Mr. Gay now moves for Judgment of Acquittal and/or a New Trial. Mr. Gay also moves for dismissal of Count Two of the Indictment for violation of the Second Amendment. For the reasons set forth below, Gay's Motions are DENIED.

### **Motion for Judgment of Acquittal**

To prevail on a Rule 29 motion, the defendant must show that no rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Mojica*, 185 F.3d 780, 789 (7th Cir. 1999).

"Whether at the time there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bearing in mind that it is the exclusive function of the jury to

determine credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences."
*United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989).

Mr. Gay argues that no witness saw him with a firearm or ammunition and no forensic evidence connected him to the same. Therefore, the Court should vacate the jury's verdict. The evidence at trial provided plenty of evidence to find Mr. Gay guilty. He was a passenger in a traffic stop and immediately fled from the police. Officers described him holding his hands as if holding something. Gay fell while being chased and a firearm was subsequently located in the area where he fell. The firearm was loaded with ammunition of the same caliber, manufacturer and bullet, case and primer type, as was later found at Gay's hotel room at the American Motor Inn.

The jury was entitled to conclude that Gay fled because he had a firearm and that the firearm found later was that same firearm. The jury also heard about the search of Gay's hotel room, the fact that he was on parole and never reported the hotel room to parole authorities. They heard testimony from Mr. and Mrs. Patel, the hotel owners, that he had instructed them that no one was to enter his room. Therefore, the jury could reasonably conclude that he possessed the ammunition found in the room.

For these reasons, the Motion for Judgment of Acquittal is DENIED.

## Motion for New Trial

Mr. Gay argues that the Court made several rulings that were legally erroneous, an abuse of discretion, and inconsistent with rulings the Court made in Gay's first trial.

Specifically, Gay points to the Court ruling that the following could not be called by Gay to testify as follows:

Officer Jason Foy to testify the area was a high crime area;

Officer Jennifer Laud to testify the firearm had been reported lost or stolen;

Officer Gable to testify that police took his key on May 23, 2020 and that he had prior negative interactions with the police, and;

Dora Villareal to testify about Gay's reports that Rock Island police officers had seized his property in May of 2020.

As to Foy, Gay's Motion offers no reason why this testimony was relevant or a miscarriage of justice. To the extent Gay wanted to establish this was a high crime area, he could have done so through Detective Whitcomb. He chose not to.

As to Laud, again Gay fails to explain the relevance. Second, the Court allowed Detective Whitcomb to testify that the firearm reported missing came from a Moline resident on March 12, 2020. The jury never heard the firearm was "stolen," therefore no inference could be drawn that Gay "stole" it.

As to Officer Gable, the jury actually heard from Detective Whitcomb that Gable seized a hotel key from Gay, in an unrelated call on May 23, 2020. The key itself had no markings that would indicate it came from the American Motor Inn and even the owner of the hotel, Mr. Patel, testified he could not determine if it was one of his hotel keys or not.

The Court allowed this and other testimony through Whitcomb and not Gable, as examined by Gay to allow Gay to pursue his theory of the case without trying his civil case against Gable and Rock Island in the criminal proceedings.

As to State's Attorney Dora Villareal, she had no conversations with Gay and was in no position to testify to Gay's alleged "contemporaneous reports." Rather, she testified at the first trial that she received an email from jail personnel that Gay was complaining about money seized from him by Officer Gable on May 23, 2020.

Finally, the Court had the benefit of hearing all these witnesses testify at the first trial and

3

A18

was in a better position at the second trial to assess the relevance of each witness.

Based on the above, Gay was not deprived a fair trial and the interest of justice do not require he be given a new one. The Motion for New Trial is respectfully DENIED.

### Motion to Dismiss on Alleged Second Amendment Grounds

Gay spends the majority of his post-trial motions brief arguing that the Court should dismiss Count Two. Gay cites *New York State Rifle & Pistol Assoc., Inc. v. Bruen,* in support of his position, arguing that *Bruen* instructs courts to consider only "constitutional text and history." 142 S.Ct. 2111, 2128-29 (2022). This issue has been decided time and again. This Court need not rehash the reasoning in its entirety. The Supreme Court has defined the right to bear arms as limited to "law abiding, responsible citizens." *See United States v. Heller*, 554 U.S. 570, 635 (2008). *Bruen* confirmed that right. *Bruen*, 142 S.Ct. at 2122.

Challenges to 18 U.S.C. 922(a)(1) have failed in every circuit to have considered them. *See Medina v. Whitaker*, 913 F.3d, 152, 155 (D.C. Cir. 2019).

The Seventh Circuit Court of Appeals has affirmed that even mail fraud defendants have no Second Amendment rights. *Kanter v. Barr* 919 F. 3d. 437, 451 (7th Cir. 2019). Most recently, in *Range v. Att'y Gen. United States*, 53 F.4th 262 (3d Cir. 2022), the Third Circuit Court of Appeals concluded, in a false statement to obtain food stamps case, that individuals convicted of felony equivalent crimes fall outside "the people" entitled to keep and bear arms under the Second Amendment.

There may be a day where a certain type of felony finds its way into the exception category of the Second Amendment, but this isn't the day, this isn't the type of felony, and this isn't the defendant that will be the case.

The Motion to Dismiss on alleged Second Amendment grounds is DENIED.

**CONCLUSION**

For the reasons set forth above, Defendant's Post-Trial Motions (Doc. 403) are DENIED.


Signed on this 5th day of December, 2022.

s/James E. Shadid
James E. Shadid
United States District Judge

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,      )
                               )
               Plaintiff,      )
                               )
        v.                     )        Case No. 4:20-cr-40026-JES-JEH-1
                               )
ANTHONY TONY GAY               )
                               )
               Defendant.      )

## <u>ORDER</u>

Defendant Anthony Gay seeks through various Motions (Docs. 68; 86) to Suppress Evidence of Ammunition found in a motel room at the American Motor Inn in Rock Island, Illinois on June 14, 2020. The United States has filed a Response (Doc. 89) and Defendant has filed a Reply (Doc. 93). On January 28, 2022, the Court heard evidence and argument from the Parties in support of their positions. The Court orally denied Defendant's Motions for the reasons stated on the record and instructed the Parties that a written Order would follow. For the reasons set forth below, Defendant's Motions (Docs. 68; 86) are denied.

In his Motions, Defendant claims that he had a reasonable and subjective expectation of privacy in the motel room because he had rented the room and that on June 1, 2020, the owner of the hotel, Pritesh Patel told Defendant he had two weeks to clear the room. Therefore, Defendant's expectation of privacy extended to June 15, 2020. Defendant furth alleges that Governor J.B. Pritzker's executive order had forbidden evictions during COVID-19.

As elicited through testimony during the January 28 hearing, Defendant was arrested after he fled from police during a traffic stop on May 31, 2020. A gun was located from his flight path and he was charged with being a felon in possession of a firearm (Count 1).

1

From the date of his arrest, the Rock Island Police had no knowledge of Defendant's motel room until June 14, 2020. That day, the police department received a phone call to respond to the American Motor Inn, wherein Defendant had been renting a room prior to his May 31, 2020 arrest.

The responding officer, Officer Mendoza, was met by the motel owners, Mr. and Mrs. Patel. The Patels told Mendoza that Defendant was no longer renting the room and while they were cleaning out the room so that they could re-rent it to customers, they located a heavy bag containing a latex glove and a bag of bullets. Then, they called the police to remove the bullets. Mrs. Patel let the police into the motel room, which the police eventually took into custody. The Patels also showed Mendoza a rental agreement showing that Defendant had rented the room until June 1, 2020.

The Court finds Defendant had no reasonable expectation of privacy in his motel room on June 14, 2020. A defendant who objects to a search bears the burden of proving a legitimate expectation of privacy in the premises to be searched. *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006). The defendant's expectation of privacy must be subjectively and objectively reasonable; that is, the defendant must establish that he exhibits an actual or subjective expectation of privacy, and that the expectation is one society is prepared to recognize as reasonable. *Id*. Though a person may have a legitimate expectation of privacy in a motel room, that expectation exists only while the person maintains the right to possess the room. *United States v. Procknow*, 784 F.3d 421, 426 (7th Cir. 2015). Here, Defendant has not shown either a subjective or objective expectation of privacy. By the time of the June 14 search, his rental agreement had expired nearly two weeks earlier on June 1, 2020. *See id.* (noting "[o]nce a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a

legitimate expectation of privacy in the hotel room.") (quoting *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997) (internal quotations omitted)). In addition, Defendant's jail call to Mr. Patel does not support his contention that he had until June 15, 2020 to clear his room. In the call, Defendant admitted, "my time is up" in the motel room. He was fixated on his desire to have someone come to the room to get his belongings because his rental had expired, and he did not expect to be released for a month. However, Mr. Patel was clear in the call that he was not going to release Defendant's personal items from the room to anyone except Defendant unless police were present because Defendant had previously told Mr. Patel that he did not want anyone in his room.

Long after Defendant's rental period had expired, the Patels entered his room on June 14, 2020 to clean it. As confirmed through Mr. Patel's testimony, he has never worked for the government or the police. Defendant never told him that he wanted to stay in that room beyond June 1 and Defendant never paid to keep the room from June 1 through June 14. Patel also testified that he never told Defendant that he had two weeks to get his belongings or that the Patels would keep his belongings in the motel room as opposed to a storage area. Once the Patels began to clean the room, they discovered the ammunition, called the police, and arranged for them to remove the ammunition. Thus, the motel room search was a private search beyond the Fourth Amendment's protections. Even accepting Defendant's assertion as true that Mrs. Patel broke her word that he had until June 15, 2020 to remove the possessions from his room, it does not affect the Fourth Amendment analysis because the search was private. Notably, Defendant did not return to collect his remaining belongings until the end of June 2020.

The motel owners then consented to the officer entering the motel room and removing the ammunition. "When a party provides police with evidence obtained in the course of a private

3

search, the police need not 'stop her or avert their eyes.'" *Rann v. Atchison*, 689 F.3d 832, 836

(7th Cir. 2012) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 489 (1971)). Rather,

authorities may repeat a private search already conducted by a third party so long as they do not

expand on it. *United States v. Bebris*, 4 F.4th 551, 560 (7th Cir. 2021). Moreover, where an

occupancy period has concluded, a hotel manager may enter the room or consent to its search.

*Procknow*, 784 F.3d at 426. Here, the officer reasonably concluded the motel owners had

authority to consent to the search of the room where Defendant's occupancy had expired.

Finally, the Governor's Executive Order is not relevant or applicable to this Motion to

suppress. The order instructs law enforcement to cease enforcements of orders of eviction. Here,

there was no order of eviction being enforced, Mr. Patel testified he did not believe he was

evicting Defendant, and Officer Mendoza did not believe he was enforcing an eviction order.

## CONCLUSION

For the reasons set forth above, Defendant's Motions (Docs. 68; 86) to Suppress are

DENIED.

Signed on this 3rd day of February, 2022.

s/James E. Shadid
James E. Shadid
United States District Judge

**A24**