No. 23-2097

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ANTHONY GAY,
*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Central District of Illinois, Peoria
Case No. 4:20-cr-40026-JES-JEH-1
District Court Judge James E. Shadid

---

**REPLY BRIEF OF DEFENDANT-APPELLANT ANTHONY GAY**

---

Michael T. Brody
 *Counsel of Record*
Reanne Zheng
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com

*Counsel for Defendant-Appellant
Anthony Gay*

**ORAL ARGUMENT SCHEDULED FOR APRIL 4, 2024**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.     The Evidence Was Insufficient To Sustain The Firearm Conviction. ........ 2

    A.     The District Court Erred In Denying Mr. Gay's Motion For Judgment Of Acquittal. ............................................................... 3

    B.     Mr. Gay Is Entitled To A New Trial. ............................................. 8

    C.     In The Alternative, Section 922(g), As Applied, Violates The Second Amendment. ................................................................. 10

II.    The Court Should Reverse Mr. Gay's Conviction On The Ammunition Charge .................................................................................. 12

    A.     The District Court Erred In Denying Mr. Gay's Motion To Suppress. .................................................................................... 13

    B.     Mr. Gay Is Entitled To A New Trial, Or Alternatively Acquittal, On The Ammunition Charge. ..................................... 16

III.   The District Court's Rulings Before The Second Trial Deprived Mr. Gay Of His Ability To Present A Defense And Warrant A New Trial .............. 17

    A.     The District Court Denied Mr. Gay's Constitutional Right To Present A Defense By Excluding His Intended Witnesses. ........... 18

    B.     The District Court Erred In Expediting The Retrial ..................... 23

IV.    The District Court Erred In Denying The Motion For New Trial Based On Newly Discovered Evidence ............................................................ 24

CONCLUSION ............................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkinson v. Garland,*
  70 F.4th 1018 (7th Cir. 2023) ........................................................10, 11, 12

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.,*
  980 F.3d 1117 (7th Cir. 2020) ................................................................. 10

*Kanter v. Barr,*
  919 F.3d 437 (7th Cir. 2019) ................................................................... 11

*New York State Rifle & Pistol Association v. Bruen,*
  597 U.S. 1 (2022) ...................................................................................... 10

*Range v. Attorney General,*
  69 F.4th 96 (3d Cir. 2023), *cert. petition filed,* 92 U.S.L.W. 14
  (U.S. Oct. 5, 2023) (No. 23-374) .............................................................. 11

*Samson v. California,*
  547 U.S. 843 (2006) ............................................................................. 15, 16

*Stoner v. California,*
  376 U.S. 483 (1964) .................................................................................. 19

*United States v. Anderson,*
  2023 WL 7531169 (N.D. Ill. Nov. 13, 2023) ............................................ 11

*United States v. Arroyo,*
  301 F. Supp. 2d 217 (D. Conn. 2004) ..................................................... 25

*United States v. Bass,*
  41 F. App'x 735 (6th Cir. 2002).......................................................... 19–20

*United States v. Cerro,*
  775 F.2d 908 (7th Cir. 1985) ................................................................... 17

*United States v. Daniels,*
  77 F.4th 337 (5th Cir. 2023) *cert. petition filed,* 92 U.S.L.W. 14
  (U.S. Oct. 5, 2023) (No. 23-376) .............................................................. 11

*United States v. Griffin,*
  2023 WL 8281564 (N.D. Ill. Nov. 30, 2023) ............................................ 12

*United States v. Griffin,*
684 F.3d 691 (7th Cir. 2012) .................................................................. 5, 7

*United States v. Howell,*
958 F.3d 589 (7th Cir. 2020) ........................................................... 3, 4, 13

*United States v. Jones,*
713 F.3d 336 (7th Cir. 2013) ......................................................................... 3

*United States v. Lewis,*
850 F. Supp. 2d 709 (N.D. Ohio 2012), *aff'd*, 521 F. App'x 530
(6th Cir. 2013) ........................................................................................... 8

*United States v. Martin,*
2024 WL 728571 (S.D. Ill. Feb. 22, 2024) ............................................... 12

*United States v. McNeal,*
900 F.2d 119 (7th Cir. 1990) ................................................................... 6, 7

*United States v. Morales,*
902 F.2d 604 (7th Cir.), *amended*, 910 F.2d 467 (7th Cir. 1990) ................ 8

*United States v. Peak,*
856 F.2d 825 (7th Cir. 1988) ..................................................................... 18

*United States v. Prescott,*
581 F.2d 1343 (9th Cir. 1978) ................................................................... 20

*United States v. Prince,*
2023 WL 7220127 (N.D. Ill. Nov. 2, 2023) ............................................... 11

*United States v. Purcell,*
526 F.3d 953 (6th Cir. 2008) .............................................................. 14, 15

*United States v. Rahimi,*
143 S. Ct. 2688 (2023) (No. 22-915) (argued Nov. 7, 2023) ...................... 12

*United States v. Shaffers,*
22 F.4th 655 (7th Cir. 2022) .................................................................... 7, 8

*United States v. Starks,*
309 F.3d 1017 (7th Cir. 2002) ................................................................ 6, 7

*United States v. Taylor,*
2024 WL 245557 (S.D. Ill. Jan. 22, 2024), *appeal docketed*, No.
24-1244 (7th Cir. Feb. 16, 2024) .............................................................. 11

*United States v. Thame,*
 846 F.2d 200 (3d Cir. 1988) ...................................................... 20

*United States v. Thomas,*
 321 F.3d 627 (7th Cir. 2003) ...................................................... 5

*United States v. Thomas,*
 65 F.4th 922 (7th Cir. 2023)...................................................... 14

*United States v. Washington,*
 184 F.3d 653 (7th Cir. 1999) ...................................................... 8

*United States v. White,*
 781 F.3d 858 (7th Cir. 2015) .............................................. 15, 16

*United States v. Williams,*
 731 F.3d 678 (7th Cir. 2013) ...................................................... 4

*Washington v. Texas,*
 388 U.S. 14 (1967) ...................................................... 17

**INTRODUCTION**

The Government's case against Mr. Gay rested on the fact that a gun was found in a public area Mr. Gay briefly passed through and ammunition was found during an unlawful search of a hotel room to which Mr. Gay, and others, had access.  The jury in the first trial heard exculpatory testimony undermining the Government's circumstantial case; it did not convict Mr. Gay.  The district court excluded the exculpatory testimony from Mr. Gay's expedited retrial; that jury convicted Mr. Gay.

*First*, the Government relies on its circular argument that insufficient and conflicting evidence of firearm possession, combined with insufficient evidence on the ammunition charge, supported both convictions.  Yet the Government has never provided a plausible, non-speculative theory of guilt beyond a reasonable doubt that fits the evidence at trial.

*Second*, the Government claims that Mr. Gay no longer had an expectation of privacy when Officer Mendoza entered his hotel room on June 14, 2020, or in the alternative, Mendoza relied on apparent authority to enter.  This argument ignores the testimony and documentary evidence that Mr. Gay, Mendoza, and the Patels understood Mr. Gay had a continuing expectation of privacy.

*Third*, the Government asks this Court to consider the excluded exculpatory evidence in isolation, while maintaining that the parties would "know what [the retrial] looks like" after the first trial.  The Government ignores the combined effect of the rulings before the expedited retrial, which prevented the jury from considering *any* evidence supporting Mr. Gay's defense.

## ARGUMENT

## I.     The Evidence Was Insufficient To Sustain The Firearm Conviction.

The Government insists that "[w]hether he threw it, whether he dropped it, whether it fell out of his pants," Dkt. 381 at 763, the fact that police found a gun in an area Mr. Gay briefly traveled through establishes not only constructive but actual possession.  *See* Resp. Br. 40.  The Government's problem is that it never proved beyond a reasonable doubt that "he threw it," "he dropped it," or "it fell out of his pants," or indeed that Mr. Gay ever had the gun.  The Government places *its* burden on Mr. Gay.  Rather than prove Mr. Gay guilty beyond a reasonable doubt, the Government conjures theories under which Mr. Gay might be guilty and challenges Mr. Gay to disprove them all.

The Government relies on evidence that a gun was recovered on the ground when another officer, who arrived at the scene after Mr. Gay's arrest, attempted to retrace Mr. Gay's path.  Officer Sailor, the arresting officer and the only witness to observe Mr. Gay during the incident, never saw Mr. Gay with a gun, never saw Mr. Gay toss, drop, or dispose of anything as he ran, and did not find a gun when he searched Mr. Gay.  Evidence that is ordinarily conclusive—the bodycam video—contradicts that officer's recollection.  *See* Op. Br. 6–7, 24–25.  Evidence that is ordinarily corroborating evidence—DNA, fingerprints, other witnesses—actually contradicts the theory of guilt.  No rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**A.    The District Court Erred In Denying Mr. Gay's Motion For Judgment Of Acquittal.**

While the Government argues that a defendant seeking judgment of acquittal faces a "nearly insurmountable" hurdle, Resp. Br. 34 (citation omitted), "the height of the hurdle depends" on the "strength of the government's evidence." *United States v. Jones*, 713 F.3d 336, 339 (7th Cir. 2013). Although a jury may draw inferences from established facts, each link in the chain of inferences "must be sufficiently strong to avoid a lapse into speculation." *Id.* at 340 (citation omitted). The Government may not prove its case with "conjecture camouflaged as evidence." *Id.* (citing *Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001)).

The Government asserts the evidence at trial "amply supported" the jury's finding that Mr. Gay possessed a firearm, but cites only two pieces of circumstantial evidence: ammunition found in Mr. Gay's hotel room consistent with the recovered firearm, and testimony that Mr. Gay was "hunched over" while leaving the traffic stop. Resp. Br. 35–38. Yet the warrantless search that produced the ammunition was unlawful, *infra* Section II(A), and even if the search was lawful, the Government still relies on a series of inferences to show constructive possession of a firearm.

Contrary to the Government's contention, *United States v. Howell,* 958 F.3d 589 (7th Cir. 2020), does not permit the Government to bootstrap insufficient evidence of possession of a firearm from insufficient evidence of possession of ammunition. *See* Resp. Br. 37 & n.10. In *Howell*, this Court

reversed the district court's denial of a motion to suppress a gun found in the defendant's pocket but held the admission of the firearm was "harmless" as to a second gun charge. 958 F.3d at 603. The Government ignores that the gun conviction in *Howell* was based on evidence of additional guns found in the defendant's apartment during lawful searches pursuant to an arrest warrant and a search warrant. *Id.* at 592, 602–03. Unlike in *Howell*, the Government here did not have "robust evidence" supporting the firearm charge.

The only other evidence the Government presented at trial was testimony that Mr. Gay was running "without swinging his arms." Resp. Br. 35. This is contradicted by both the dashcam video, which shows Mr. Gay moving his arms normally as he got out of the front passenger seat and closed the door, and Officer Sailor's bodycam video, which only shows Mr. Gay standing or walking upright before Sailor handcuffed him. *See* Dkt. 355 at 1 (Gov't Exs. 5, 6-2a). The videos show Mr. Gay's posture remained consistent from the time he got out of the front passenger seat—when the Government contends he had the gun—through the moment Officer Sailor handcuffed him—after the Government contends Mr. Gay "dropped or discarded" the gun. *See* Resp. Br. 37, 55. Even if supported by the video evidence, testimony that Mr. Gay ran without swinging his arms was insufficient to support an inference that he was concealing a weapon. *Cf. United States v. Williams*, 731 F.3d 678, 686–89 (7th Cir. 2013) (placement of the defendant's hands in his pocket or near his waistband and efforts to move away from area were insufficient to support reasonable suspicion defendant was armed). The Government cites no authority for the idea that

running or walking in a particular fashion provides anything more than a pretext for an arrest.

Nor did the circumstances support the Government's hunch. Officer Sailor testified that he never saw Mr. Gay with a gun and never saw him throw or toss anything. Dkt. 379 at 189. Earlier that day, Sailor encountered Mr. Gay twice—searching and arresting Mr. Gay for a traffic violation around 3:30 p.m., and observing Mr. Gay standing in the roadway shortly before the traffic stop. *Id.* at 183–85. Sailor conceded he did not see Mr. Gay with a gun on either occasion. *Id.* Officer Costas testified he saw Mr. Gay "around an hour, 45 minutes" before the incident leading to Mr. Gay's arrest and did not see him with a gun. *Id.* at 85–86, 103.

The Government is thus left with Mr. Gay's fleeting "proximity to contraband." *United States v. Griffin*, 684 F.3d 691, 696 (7th Cir. 2012). That evidence is not enough to "prove constructive possession." *Id.*; *United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003). In *Thomas*, this Court vacated the conviction and held the defendant's proximity to a firearm could not establish constructive possession. 321 F.3d at 636–37. The trial evidence here showed only that Mr. Gay traveled through a public area where a gun was later located. Mr. Gay had neither "exclusive control" nor a "substantial connection" to the public location where the gun was recovered. *Id.* at 636. As this Court explained in *Thomas*, if a firearm is found in an area accessible to the public, presence on the property where it is located is insufficient to support a finding of possession. *Id.* The Government does not distinguish the circumstances of Mr. Gay's May

5

31 arrest from the facts in *Thomas*, where the firearm was similarly found on public property not within the defendant's control.  *See* Resp. Br. 39–40.

The Government's circumstantial evidence ignores the weight of contrary evidence undermining its theories.  Mr. Gay's fingerprints and DNA were not on the gun, despite the fact that he supposedly handled the gun while ungloved on a summer night.  The dashcam video shows Mr. Gay holding his arms normally as he exited the vehicle, closed the door, and began to walk away from the vehicle.  *See* Dkt. 355 at 1 (Gov't Ex. 6-2a).  The bodycam video—which only shows Mr. Gay upright—further undermines the credibility of the officers who claimed to draw conclusions from observations about whether Mr. Gay was swinging his arms.  *Id.* (Gov't Ex. 5).  Contradictorily, the Government defends the failure of the bodycam to capture Mr. Gay's alleged fall because it was dark. Resp. Br. 41.  Yet the Government contends the same conditions did not interfere with Officer Sailor's ability to capture the nuance of Mr. Gay's gait and conclude that he must have been armed.  The circumstantial evidence fails to prove guilt beyond a reasonable doubt.

The Government argues circumstantial evidence can establish knowing possession, and this Court has upheld convictions based on constructive possession.  Resp. Br. 39–40.  While that proposition is true in the abstract, the Government's comparison to *United States v. Starks*, 309 F.3d 1017 (7th Cir. 2002), and *United States v. McNeal*, 900 F.2d 119 (7th Cir. 1990), does not support a conclusion, beyond a reasonable doubt, that Mr. Gay possessed a gun. "Constructive possession may be established by demonstrating that the

6

defendant knowingly had both the power and the intention to exercise dominion and control over the object, either directly or through others." *Griffin*, 684 F.3d at 695. The "necessary connection between the defendant and the contraband is typically shown in one of two ways": first, if the defendant had "exclusive control" over the property where the contraband was discovered; or second, "in the absence of exclusive control, evidence that a defendant had a substantial connection to the location where contraband was seized." *Id.* (cleaned up). In *Starks*, possession of a gun was used to merit a two-level enhancement on a drug charge. 309 F.3d at 1021. The defendant was found hiding in a closet where a concealed firearm was recovered within his reach, and he admitted to working in the suspected crack house where ammunition was found in plain view. *Id.* at 1027. And in *McNeal*, the defendant was the sole occupant of a vehicle seen speeding away from a shooting, where the arresting officer heard two shots, never lost sight of the vehicle, and found a recently fired gun with two expended cartridges in its chamber under the driver's seat. 900 F.2d at 120–21.

Comparison of this case to this Court's recent decision in *United States v. Shaffers*, 22 F.4th 655 (7th Cir. 2022), demonstrates the insufficiency of the proof here. Shaffers was convicted of possessing a firearm that was found under the seat of the car he was driving. When police stopped the car and requested its occupants show their hands, Shaffers leaned forward, hunched, and engaged in "furtive movements" in the area where the gun was later found. *Id.* at 658. There is no similar proof in this case. The *Shaffers* Court also found the conviction was supported by evidence that Shaffers fled. *Id.* The Court stated

7

that whether flight supports an inference of guilt is a question of fact. *Id.* at 664. In *Shaffers*, the jury assessed whether the defendant fled to avoid detection or because he feared the police would arrest him for not having a valid license, as he contended. Here, the district court erroneously excluded Mr. Gay's evidence explaining why he feared another encounter with the Rock Island police. *See infra* Section III; Op. Br. 38–41. It is error to infer guilt from flight while at the same time excluding Mr. Gay's evidence of the reason for his actions.

**B.    Mr. Gay Is Entitled To A New Trial.**

Alternatively, in light of inconsistent and conflicting evidence, Mr. Gay is entitled to a new trial on the firearm charge. The Government does not dispute that a court evaluating a request for a new trial may weigh evidence and evaluate credibility. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). Courts have ordered new trials when the record shows the conviction relied on conflicting witness testimony and physical evidence. *E.g.*, *United States v. Morales*, 902 F.2d 604, 608–09 (7th Cir.), *amended*, 910 F.2d 467 (7th Cir. 1990); *United States v. Lewis*, 850 F. Supp. 2d 709, 761 (N.D. Ohio 2012) (vacating verdict based on "ambiguous circumstantial evidence that leaves much room for reasonable doubt"), *aff'd*, 521 F. App'x 530 (6th Cir. 2013). The Government attempts to dismiss the conflicting evidence as inconclusive, *see* Resp. Br. 40–42, but this incorrectly shifts the burden to Mr. Gay, who is not required to disprove the Government's rotating theories.

Any theory that Mr. Gay dropped or lost the gun by accident is undercut by the bodycam video and Officer Sailor's own testimony that he did not see a

gun along the path as he walked Mr. Gay back to the squad car. The Government asserts Sailor did not notice the gun on the ground because it was dark, he was communicating with other officers, and Mr. Gay was jerking forward and yelling. *See* Resp. Br. 36. This is contradicted by the bodycam video, which shows that the area was brightly lit as Officer Sailor walked Mr. Gay back to the squad car, and that Sailor walked directly over the location where the gun was later found. The bodycam video similarly undermines the Government's suggestion that Sailor was distracted by Mr. Gay, as the bodycam shows Mr. Gay stopped "jerking forward and yelling" before he and Sailor reached the location where the gun was later recovered. Dkt. 355 at 1 (Gov't Ex. 5).

If the Government's theory is that Mr. Gay tossed the gun, it is unsupported by the evidence at trial. Officer Sailor testified that he never saw Mr. Gay make a tossing motion, and that the gun was found approximately where Sailor testified Mr. Gay fell, close to "where his left hand would have went." Dkt. 379 at 131, 189. The obvious problem with this theory is that the video did not show Mr. Gay fall. The Government recharacterizes Mr. Gay's argument to be only that the video did not show the moment he allegedly fell or the gun on the ground where Sailor said Mr. Gay fell, as it was dark at the time. Resp. Br. 41. That is not Mr. Gay's point. Instead, Mr. Gay argues the video did not show Mr. Gay fall or get up, and Sailor's memory is unreliable because it is mistaken as to this critical fact. And while Sailor concluded the gun appeared "freshly placed," the absence of fingerprints or sufficient DNA for comparison undercuts the theory that Mr. Gay handled the gun "only a few minutes" before it was

recovered.  *See* Resp. Br. 7, 36.   The Government points to the forensic investigator's testimony that it is "very common" to be unable to collect fingerprints from a firearm, *see* Resp. Br. 42, but does not explain why DNA collected from the firearm showed "a mixture of individuals in the profile," Op. Br. 8, 25, without a suitable sample from *any* person if Mr. Gay recently handled the gun.   The DNA profile similarly fails to support an inference that Mr. Gay handled the gun only a few minutes before it was recovered.

### C.     In The Alternative, Section 922(g), As Applied, Violates The Second Amendment.

This Court addresses non-constitutional challenges before constitutional issues.  *See Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1140 (7th Cir. 2020).  Should the Court find it necessary to reach whether restrictions on possession of firearms and ammunition by felons violates the Second Amendment, this Court should reverse Mr. Gay's convictions, or vacate his convictions and remand the case to the district court to address whether Section 922(g), as applied, violates the Constitution.  *See* Op. Br. 26–29.

The Government incorrectly asserts Mr. Gay has waived any challenge to the constitutionality of Section 922(g)(1) because he failed to develop it below or on appeal.  *See* Resp. Br. 59–60.  At the time of Mr. Gay's trial, this and other Circuits applied the "means-end" test to Second Amendment challenges.  *See Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023).  A month after Mr. Gay's retrial, the Supreme Court rejected the "means-end" test.  *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 17 (2022).  Mr. Gay thereafter

10

challenged Section 922(g)(1) as applied to his case in his consolidated post-trial motion. Dkt. 403. The district court denied the motion, relying on *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019). Dkt. 412 at 4, A19. Thus, Mr. Gay timely raised his challenge.

After the district court denied Mr. Gay's post-trial motion, this Court recognized the test the district court used is no longer correct. This Court instructed district courts to conduct a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)." *Atkinson*, 70 F.4th at 1022–24. Following *Atkinson*, courts in this Circuit have considered the constitutionality of Section 922(g)(1). Several decisions have rejected the historical arguments presented by the Government, *see* Resp. Br. 67–71, and have found Section 922(g)(1) unconstitutional as applied. *See United States v. Taylor*, 2024 WL 245557 (S.D. Ill. Jan. 22, 2024) (finding Section 922(g)(1) unconstitutional as applied to defendant), *appeal docketed*, No. 24-1244 (7th Cir. Feb. 16, 2024); *United States v. Anderson*, 2023 WL 7531169 (N.D. Ill. Nov. 13, 2023) (same); *United States v. Prince*, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023) (same). These cases are consistent with decisions of other courts of appeals. *See generally Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), *cert. petition filed*, 92 U.S.L.W. 14 (U.S. Oct. 5, 2023) (No. 23-374); *cf. United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) *cert. petition filed*, 92 U.S.L.W. 14 (U.S. Oct. 5, 2023) (No. 23-376).

Contrary to the Government's suggestion that Mr. Gay's prior convictions preclude an as-applied challenge, courts have found Section 922(g)(1) unconstitutional as applied to defendants with extensive criminal histories. *E.g.*,

11

*United States v. Griffin*, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023) (finding Section 922(g)(1) unconstitutional as applied where defendant's robbery conviction occurred over ten years earlier and more recent felony conviction did not demonstrate risk of violence); *see also United States v. Martin*, 2024 WL 728571 (S.D. Ill. Feb. 22, 2024) (finding Section 922(g)(1) unconstitutional as applied where defendant was convicted two years earlier for obstructing justice, reduced from charge of aggravated unlawful use of a weapon).

Mr. Gay notes that this is a rapidly developing area of law and the appropriate standards will likely be affected by the anticipated decision in *United States v. Rahimi*, 143 S. Ct. 2688 (2023) (No. 22-915) (argued Nov. 7, 2023).  As this Court ruled in *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023), Mr. Gay submits that if the Court reaches this issue, it should remand the case to the district court for consideration in light of this Court's post-*Bruen* legal standard, potential guidance from the Supreme Court in *Rahimi*, and other decisions by this or other courts.  Alternatively, the Court could apply the reasoning of the Third Circuit in *Range* and the district court decisions addressed above, accept Mr. Gay's arguments below, and reverse the convictions on constitutional grounds.

## II.     The Court Should Reverse Mr. Gay's Conviction On The Ammunition Charge.

Mr. Gay is entitled to a new trial, or alternatively acquittal, on the ammunition charge.  The circumstantial evidence on which the Government bases its case was the fruit of an unlawful search.  Moreover, the Government

attempted to bootstrap insufficient evidence of the firearm charge to make up for its insufficient evidence of the ammunition charge.

### A.   The District Court Erred In Denying Mr. Gay's Motion To Suppress.

Mr. Gay had a reasonable expectation of privacy in his hotel room, Officer Mendoza understood Mr. Gay retained that expectation of privacy, and the evidence obtained through the warrantless search should be excluded.  Op. Br. 30–34.  The Government argues that the rental period expired on June 1, 2020, and could only be extended by an additional payment.

The Government ignores Mr. Patel's testimony at the suppression hearing that proved Mr. Gay's continuing right to control the premises at the time of the search.  Patel testified that he spoke to Mr. Gay on June 1, 2020, and declined to release Mr. Gay's property to his girlfriend.  Dkt. 311 at 93.  Patel said he would allow Mr. Gay to keep his property in the room for two weeks, but after two weeks, Mr. Gay's property would be removed.  *Id.*  Thereafter, Patel denied entry to anyone other than Mr. Gay, even after June 1, without the police present.  *See id.* at 73–74.  Mr. Patel further testified that two different people came to the hotel to collect Mr. Gay's belongings between the June 1 call and the June 14 warrantless search, but Patel refused to let either person enter the room.  *Id.* at 74–75.

Mr. Patel's trial testimony, which may be considered in reviewing a suppression ruling, *see Howell*, 958 F.3d at 596, buttresses Mr. Gay's right to the premises.  Patel testified he previously allowed Mr. Gay to pay for his room

periodically "[b]ecause I know him." Dkt. 380 at 256–57. The hotel register data captured on Officer Mendoza's bodycam video similarly showed that Mr. Gay previously paid for his room in installments. Dkt. 355 at 2 (Gov't Exs. 15-2, 15-4). The continued presence of Mr. Gay's belongings in the room, in addition to his prior payment history, supports Mr. Gay's continued expectation of privacy in the room and the personal belongings left in the room.

The Government argues that Mr. Patel had apparent authority to consent to a warrantless search. *See* Resp. Br. 44–47. This argument is undermined by Officer Mendoza's testimony. The knowledge of the officer who conducted the search is critical in evaluating the lawfulness of the search. *United States v. Thomas*, 65 F.4th 922, 926 (7th Cir. 2023) (apparent authority "rests on the facts known to law enforcement at the time of the search"); *see also United States v. Purcell*, 526 F.3d 953, 963 (6th Cir. 2008) (the determination of consent must be judged by whether "facts available to the officer at the moment warrant" the reasonable "belief that the consenting party had authority over the property") (cleaned up). The Government does not contest this legal principle. *See* Resp. Br. 44–47. Mendoza's testimony confirmed, based on facts he knew, that Mr. Gay had a continued expectation of privacy in the room and for his personal belongings. Officer Mendoza recalled Mrs. Patel explaining that Mr. Gay initially rented the room until June 1, but that "after two weeks they were going to get

his belongings and store it for him[.]"[1]   Dkt. 311 at 144.   This testimony corroborates Mr. Gay's understanding that he had the right to remain in possession of the room and his property until June 15.

Testimony at the suppression hearing confirmed that everyone involved in the search knew Mr. Gay had a right to remain in the room.  The evidence showed that before the search, the hotel register data indicated Mr. Gay had a right to the hotel room as its occupant.  *See* Dkt. 95 at 3; Dkt. 212 at 1 (Gov't Ex. 2). After Mendoza searched the hotel room, Mr. Patel created the receipt and told Mendoza, "I'm going to check him [Mr. Gay] out now," further confirming that Mr. Gay had a continuing right to control the premises at the time of the search. Dkt. 311 at 157–58.

Mr. Gay's status as a parolee did not eliminate his expectation of privacy. *See* Resp. Br. 45.  The Government contends the warrantless search of Mr. Gay's hotel room was reasonable under *Samson v. California,* 547 U.S. 843 (2006),  and this Court's decision in *United States v. White*, 781 F.3d 858 (7th Cir. 2015).  *See* Resp. Br. 47.  In *Samson v. California*, the Supreme Court declined to hold that a parolee categorically has no expectation of privacy. 547 U.S. at 850 n.2.  The Government ignores that the officer in *Samson* conducted the challenged search pursuant to a California law requiring all parolees to agree to search or seizure

---

[1] Even if the Patels had authority to consent to the search, that authority was not apparent to Officer Mendoza, and this alone created an ambiguity sufficient to erase any apparent authority.  *See Purcell*, 526 F.3d at 963 ("apparent authority cannot exist if there is ambiguity as to the asserted authority and the searching officers do not take steps to resolve the ambiguity").

at any time, and acted based on, and with knowledge of, the petitioner's status as a parolee. *See id.* at 846–47. Similarly, in *White*, the officers who searched the defendant's bag without a search warrant had a warrant to arrest the defendant for violating his parole. *See* 781 F.3d at 859.

Here, the record is devoid of evidence that Officer Mendoza was aware of Mr. Gay's parole status. Mendoza was responding to Patel's call. He was not working on Mr. Gay's case. Parole Agent Lombardo testified at trial that the parole agreement would have allowed Lombardo, as Mr. Gay's parole officer, to search Mr. Gay's hotel room. Dkt. 380 at 405. But Lombardo did not conduct the search, Mendoza did. Mendoza testified only that he was responding to a service call from the American Motor Inn. Dkt. 311 at 141. He did not testify he was acting pursuant to Mr. Gay's parole agreement or that he was even aware of Mr. Gay's parole status.

### B.    Mr. Gay Is Entitled To A New Trial, Or Alternatively Acquittal, On The Ammunition Charge.

In the absence of physical evidence or testimony connecting Mr. Gay to the firearm or the ammunition, the Government relied on the fact that some ammunition found in the hotel room was the same type found in the firearm. Mr. Gay was prejudiced by the unlawfully obtained evidence, and the Court should vacate the conviction on the ammunition charge and order a new trial.

Alternatively, the Court should reverse Mr. Gay's conviction. Excluding the evidence obtained in the warrantless search leaves no evidence that Mr. Gay possessed ammunition. Moreover, the bullets were found in a dresser in a room

that Mr. Gay occupied approximately two weeks before the bullets were found. In its response brief, the Government argues "[o]nly Gay had a working guest keycard" for the room, Resp. Br. 37, but this was never established at trial. Patel testified that he *could* have programmed another key card for Mr. Gay after the old one was seized, but conceded his records did not indicate whether he created a new key card. Dkt. 380 at 335–36. Mr. Gay's fingerprints and DNA were not found on the ammunition, and there was no evidence to show how long the ammunition had been inside the room. Because the Patels removed everything else from the room prior to Officer Mendoza's arrival, there was no evidence to show the ammunition was found within close proximity to other items belonging to Mr. Gay. In fact, Patel admitted he could not remember a single item of Mr. Gay's property that was found in the same drawer. *Id.* at 307. At best, the Government's evidence is that bullets were found in a room to which Mr. Gay, and others, had access.

## III. The District Court's Rulings Before The Second Trial Deprived Mr. Gay Of His Ability To Present A Defense And Warrant A New Trial.

The district court's exclusion of exculpatory testimony from the retrial deprived Mr. Gay of a fair trial. *See* Op. Br. 36–45. Mr. Gay had a constitutional right "to present his own witnesses to establish a defense," and a trial court may not prejudge exculpatory evidence and exclude it from trial. *See Washington v. Texas*, 388 U.S. 14, 19–20 (1967); *United States v. Cerro*, 775 F.2d 908, 916 (7th Cir. 1985). This Court has emphasized that "[w]hen erroneously excluded evidence would have been the only or primary evidence in support of or in

opposition to a claim or defense, its exclusion is deemed to have had a substantial effect on the jury." *United States v. Peak*, 856 F.2d 825, 834–35 (7th Cir. 1988). Particularly in this case, where the Government's evidence was circumstantial, the district court's decision to exclude Officer Foy, Officer Gable, State's Attorney Villarreal, and any reference to the events of May 23, 2020, denied Mr. Gay a meaningful opportunity to present a complete defense. The jury was only able to evaluate the strength of the Government's evidence against Mr. Gay, who was precluded from introducing plausible alternate explanations for the gun, the ammunition, and his reasons to avoid the police.

### A. The District Court Denied Mr. Gay's Constitutional Right To Present A Defense By Excluding His Intended Witnesses.

The testimony admitted in the first trial but excluded from the second trial was material and exculpatory. In its response, the Government ignores the collective effect on Mr. Gay's opportunity to defend against the charges and attempts to address each piece of excluded evidence in isolation.

*Events of May 23.* Officer Gable's and State's Attorney Villarreal's testimony during the first trial established that Mr. Gay had experienced a recent negative encounter with the police shortly before his May 31 arrest. The Rock Island Police seized Mr. Gay's property, including cash, cell phones, and a key card with access to Mr. Gay's room at the American Motor Inn, just one week before May 31 and three weeks before the ammunition was recovered on June 14. Op. Br. 9. The City of Rock Island eventually consented to a judgment in favor of Mr. Gay to resolve his tort claim. *Id.* at 9 & n.2. This evidence

demonstrated why Mr. Gay walked away from the police on May 31 and was unwilling to permit the police to search his room.

The Government asserts that Gable's and Villarreal's testimony and the events of May 23 were "entirely irrelevant to whether Gay possessed the Glock on May 31 or the ammunition found in Room 133." *See* Resp. Br. 49. Yet Gable and Villarreal could testify not only to the key card seized from Mr. Gay, but that the police seized additional property—including approximately $1,500 in cash— from Mr. Gay and that Mr. Gay made multiple complaints against the Rock Island Police Department, including at least some that were communicated to the Police Department.

The Government dismisses Gable's and Villarreal's testimony as irrelevant because it "would not have justified Gay's flight from the traffic stop," *see* Resp. Br. 50. The Government mischaracterizes the actual impact of the testimony, which was admitted in the first trial. The Government's theory was that Mr. Gay fled the traffic stop and later refused to allow the police to enter his hotel room because he had something to hide. Mr. Gay was entitled to call witnesses to explain his reasons for wanting to avoid further contact with the police on May 31, his refusal to allow them to enter his room, and the Rock Island Police Department's animus against him. Mr. Gay's fear that the police would again steal from him explains why he resisted police entering his room, as was Mr. Gay's constitutional right. The Government essentially argues Mr. Gay should be found guilty because he asserted his rights. *See Stoner v. California*, 376 U.S. 483, 490 (1964) ("a hotel room is entitled to constitutional protection"); *United*

19

*States v. Bass*, 41 F. App'x 735, 737–38 (6th Cir. 2002); *cf. United States v. Thame*, 846 F.2d 200, 206–07 (3d Cir. 1988) (defendant's refusal to consent to a search of his home is not evidence that he knew the search would produce incriminating evidence); *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978) ("passive refusal to consent to a warrantless search" "cannot be considered as evidence of criminal wrongdoing").

The Government argues Mr. Gay had the *option* to elicit limited testimony regarding the key card. But the ability to ask questions of a different, less knowledgeable witness does not render the excluded testimony cumulative or otherwise inadmissible. The excluded witnesses were uniquely able to testify about Mr. Gay's claim that the police had robbed him. Officer Gable confirmed during the first trial that he searched Mr. Gay, seized his property, and refused Mr. Gay's request to return the property during the May 23, 2020 incident. Dkt. 334 at 567–71.

In its December 5, 2022 order denying Mr. Gay's motion for a new trial, the district court explained that it allowed testimony regarding Mr. Gay's hotel key "through Whitcomb ... to allow Gay to pursue his theory of the case without trying his civil case against Gable and Rock Island in the criminal proceedings." Dkt. 412 at 3, A18. Even if Mr. Gay intended to use Gable's testimony in his civil trial, this rationale ignores that Gable already testified in the first trial and Mr. Gay knew what he would say. Mr. Gay also knew he could impeach Gable if he strayed from prior testimony. He could not do so with Whitcomb. Moreover, Mr. Gay's theory of defense was not limited to his claim that the police seized his

key card and had access to his hotel room, but that the police previously seized other property—including cash and phones—from Mr. Gay giving him compelling reasons for wanting the police to stay out of his room.  That defense centered on Gable's actions and it was error to exclude Gable's testimony. In the retrial, Detective Whitcomb could only confirm that Gable seized property—including the hotel key—from Mr. Gay on May 23, 2020, but was unable to confirm that Mr. Gay was assaulted by another Rock Island police officer during that same incident.  Dkt. 381 at 614–15.

State's Attorney Villarreal testified in the first trial that she received at least three of Mr. Gay's complaints, and that she spoke to at least one detective at the Rock Island Police Department about them.  Dkt. 334 at 593–94, 596–97, 601.  Another witness, Carolyn Hough, testified at the first trial that she called Villarreal regarding the property Rock Island Police seized from Mr. Gay.  *Id.* at 629–30.  This evidence of prior negative experiences with the Rock Island Police also allowed Mr. Gay to provide a plausible alternate explanation for walking away from the police during the May 31 traffic stop and wanting the police to stay out of his hotel room.  The district court erred in excluding that testimony, which Detective Whitcomb could not provide, from the retrial.

By barring *any* reference to the May 23 incident beyond the seizure of the key card, the district court precluded Mr. Gay from presenting a plausible alternate explanation for his attempts to avoid further police contact, for the gun recovered on May 31, or for the ammunition seized on June 14.  The district court compounded this error by ruling the Government did not open the door by

21

eliciting testimony from Amy Blommer that implied Mr. Gay attempted to conceal ammunition in his hotel room. Dkt. 381 at 704–05. Ms. Blommer would have testified about Mr. Gay's fear of the Rock Island Police, refuting the inference the Government was allowed to argue. *See* Dkt. 334 at 605–15. Yet the Court refused to allow Ms. Blommer to explain, allowing the Government to argue the inference that Mr. Gay had something to hide and depriving Mr. Gay of the evidence to refute it.

*Officer Foy.* In the first trial, Mr. Gay called Officer Foy, the Rock Island Police Department's Freedom of Information Officer whose testimony refuted the Government's circumstantial case by supporting an alternative explanation for the gun recovered on May 31, 2020. Op. Br. 9, 41–43. Foy testified about a document he prepared showing recent police service calls concerning the address where the gun was found, including reports of shots fired. Dkt. 334 at 549–50, 553. The first trial transcript was available to Mr. Gay, and Foy could be impeached if he deviated from prior testimony. The district court excluded Foy from the retrial, a decision the Government defends on the ground that Mr. Gay had other options to present evidence of service calls to the area where he was arrested on May 31, 2020. *See* Resp. Br. 50–52.

The Government's suggestion is entirely speculative. There is no evidence that other witnesses could testify about the document that Officer Foy prepared summarizing service calls. Beyond that, the district court and the Government ignored that Mr. Gay was entitled to exercise his judgment as to which witness would better support his defense. Mr. Gay knew that Foy would offer exculpatory

testimony and he could hold Foy to it based on prior trial testimony. Suggesting Mr. Gay could try to elicit the same facts from a different witness is error. Moreover, the *option* to elicit limited, uncertain testimony regarding the service calls from a different witness did not render Foy's testimony cumulative or otherwise inadmissible. Mr. Gay could not, as the Government suggests, rely on Detective Whitcomb or Officers Costas, Sailor, or Mendoza to testify as to Foy's knowledge or to authenticate the service call records collected by Foy as the communications supervisor for the Rock Island Police Department. The Government also ignores that Foy, in addition to authenticating the service calls to 502 6th Street over a five-year period, provided additional context on the nature of the codes and the overall volume of calls to the area.

**B.     The District Court Erred In Expediting The Retrial.**

In addition to erroneously limiting Mr. Gay's defense by preventing him from calling the witnesses of his choice, the expedited retrial precluded Mr. Gay from preparing a complete defense based on entirely different witnesses.

While the Government was able to call the same witnesses and present a case nearly identical to its case in the first trial, the pretrial rulings excluding key defense witnesses significantly limited Mr. Gay's ability to present a defense case. At the time the district court advanced the date of the second trial, the Government may have known what the retrial would look like, *see* Resp. Br. 56–

57, but the expedited date left Mr. Gay only two and a half weeks to prepare a new theory of defense while proceeding *pro se* without standby counsel.[2]

The Government argues that the expedited retrial was motivated by speedy trial concerns Mr. Gay raised about a rescheduled competency examination to determine his ability to represent himself in the first trial.  Resp. Br. 57–58. There is no suggestion in the record that Mr. Gay insisted on expediting his retrial because of speedy trial concerns.  To the contrary, he opposed it.  In the six months between the October 2021 order and the April 2022 pretrial conference, the Government and Mr. Gay filed—and the court granted—motions to continue the first trial date without any objection from Mr. Gay to the exclusion of time under the Speedy Trial Act.  *See* Dkts. 219, 245, 280.  The speedy trial concerns Mr. Gay raised in October 2021 did not justify the district court's decision, over Mr. Gay's objection, to expedite the retrial by two weeks.

## IV.  The District Court Erred In Denying The Motion For New Trial Based On Newly Discovered Evidence.

Mr. Gay was entitled to a new trial based on newly discovered evidence. Mr. Gay first located an expert witness to review Officer Sailor's bodycam footage after the second trial and the witness completed his analysis of the video in

---

[2] The Government argues Mr. Gay had "ample time before the retrial" based on his filings between the first and second trials. *See* Resp. Br. 58.  These consisted mostly of renewed motions and motions to reconsider, showing that Mr. Gay still had not received certain documents and transcripts necessary to prepare for the retrial and needed additional time to deal with the district court's rulings eliminating his previously admitted defense witnesses.  *See* Dkt. 338 at 29–30, 34–35.

January 2023. That evidence further undermined the Government's circumstantial case.

In response, the Government argues the bodycam video was available prior to the first trial, Resp. Br. 54–55, but a post-trial discovery concerning previously available evidence can constitute newly discovered evidence. *See, e.g.*, *United States v. Arroyo*, 301 F. Supp. 2d 217 (D. Conn. 2004) (granting new trial after post-trial discovery that audiotape used to bolster witness credibility was not real-time recording). The Government ignores that Mr. Gay had no reason to believe he would need enhanced video evidence until the first trial, when the Government introduced testimony why the video was inconsistent with Officer Sailor's version of events. The Government also argues Mr. Gay did not submit the expert's affidavit for four months. The Government misstates the standard for newly discovered evidence. It is undisputed the enhanced video and expert testimony were discovered after the retrial and could not have been discovered before the first trial. The expert testimony and enhanced video are independently exculpatory, as both showed there was no gun on the ground as Officer Sailor walked Mr. Gay back to the squad car.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in his Opening Brief, Mr. Gay requests that this Court reverse his conviction. In the alternative, he requests the Court vacate the conviction and remand the case for a new trial.

Dated: March 1, 2024

Respectfully submitted,

ANTHONY GAY

/s/ Michael T. Brody
Michael T. Brody
  *Counsel of Record*
Reanne Zheng
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com
rzheng@jenner.com

*Counsel for Defendant-Appellant Anthony Gay*

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, according to the word count function of Microsoft Office Word 365, this brief contains 6,990 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12 point Bookman Old Style for the main text and 11 point Bookman Old Style for the footnotes.

Dated: March 1, 2024

                                                    /s/ Michael T. Brody
                                                      Michael T. Brody

**CERTIFICATE OF SERVICE**

I, Michael T. Brody, an attorney, hereby certify that on March 1, 2024, I caused the **Reply Brief Of Defendant-Appellant Anthony Gay** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause fifteen (15) copies of the above-named brief to be transmitted to the Court via UPS overnight delivery, delivery charge prepaid, within five days of that date.

Dated: March 1, 2024

/s/ Michael T. Brody
Michael T. Brody