**No. 23-2097**

===============================================

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

===============================================

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ANTHONY GAY,

*Defendant-Appellant.*

————————————————

On Appeal from the United States District Court
for the Central District of Illinois
No. 4:20-cr-40026-JES-JEH-1
Judge James E. Shadid, District Court Judge
Magistrate Judge Jonathan E. Hawley

————————————————

**DEFENDANT-APPELLANT ANTHONY GAY'S
PETITION FOR REHEARING OR FOR REHEARING EN BANC**

Michael T. Brody
  *Counsel of Record*
Reanne Zheng
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
mbrody@jenner.com

*Counsel for Defendant-Appellant*

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. 23-2097

Short Caption: USA v. Anthony Gay

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[X]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Anthony Gay

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

    Jenner & Block LLP; Illinois Prison Project; Keegan, Tindal, & Jaeger; Schierer & Ritchie; McCall Law Offices PC;

    Federal Public Defender; Toner Law Office; Jack E. Dusthimer PC; Rodney R. Nordstrom

(3)    If the party or amicus is a corporation:

    i)    Identify all of its parent corporations, if any; and
        N/A

    ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:
        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
None

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
None

Attorney's Signature  / s/ Michael T. Brody    Date:  May 16, 2024    (new)

Attorney's Printed Name:  Michael T. Brody

 Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes X No
Address:    Jenner & Block LLP 353 North Clark Street, Chicago, IL  60654

Phone Number:  (312) 923-2711    Fax Number: (312) 527-0484
E-Mail Address:  mbrody@jenner.com

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>23-2097</u>

Short Caption: <u>USA v. Anthony Gay</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[X ]  PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Anthony Gay</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Jenner & Block LLP; Illinois Prison Project; Keegan, Tindal, & Jaeger; Schierer & Ritchie; McCall Law Offices PC;</u>

    <u>Federal Public Defender; Toner Law Office; Jack E. Dusthimer PC; Rodney R. Nordstrom</u>

(3)    If the party or amicus is a corporation:

    i)    Identify all of its parent corporations, if any; and
        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:
        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    <u>None</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    <u>None</u>

Attorney's Signature <u>/s/ Reanne Zheng</u>    Date: <u>May 16, 2024 (new)</u>

Attorney's Printed Name: <u>Reanne Zheng</u>

  Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**    **No X**
Address: <u>Jenner & Block LLP 353 North Clark Street, Chicago, IL  60654</u>

Phone Number: <u>(312) 840-7379</u>    Fax Number: <u>(312) 527-0484</u>
E-Mail Address: <u>rzheng@jenner.com</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iv

STATEMENT IN SUPPORT OF REHEARING OR REHEARING EN BANC........... 1

SUMMARY OF THE CASE ................................................................. 1

ARGUMENT ....................................................................................... 2

I.    The Panel's Decision Conflicts With Decisions Holding The Sixth
      Amendment Grants Defendants The Right To Present A Defense.............. 2

II.   The Panel's Refusal To Suppress The Warrantless Search Of Mr.
      Gay's Hotel Room Conflicts With Established Law................................... 7

III.  The Panel Or Full Court Should Rehear Mr. Gay's Second
      Amendment Argument.......................................................................... 10

CONCLUSION .............................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkinson v. Garland,*
    70 F.4th 1018 (7th Cir. 2023) ...................................................1, 10, 11, 12

*New York State Rifle & Pistol Association v. Bruen,*
    597 U.S. 1 (2022) ................................................................... 1, 10

*Range v. Attorney General,*
    69 F.4th 96 (3d Cir. 2023) ......................................................... 14

*Samson v. California,*
    547 U.S. 843 (2006) ............................................................ 10, 11

*United States v. Allen,*
    106 F.3d 695 (6th Cir. 1997) ........................................................ 9

*United States v. Bowling,*
    770 F.3d 1168 (7th Cir. 2014) ...................................................... 5

*United States v. Chapman,*
    765 F.3d 720 (7th Cir. 2014) ....................................................... 4

*United States v. Dorais,*
    241 F.3d 1124 (9th Cir. 2001) ...................................................... 8

*United States v. Duarte,*
    No. 22-50048, 2024 WL 2068016 (9th Cir. May 9, 2024) .......................... 13

*United States v. Evans,*
    728 F.3d 953 (9th Cir. 2013) ................................................... 5, 6, 7

*United States v. Freeman,*
    479 F.3d 743 (10th Cir. 2007) .................................................... 10

*United States v. Harris,*
    733 F.2d 994 (2d Cir. 1984) ...................................................... 5, 6

*United States v. Jackson,*
    69 F.4th 495 (8th Cir. 2023) ...................................................... 14

*United States v. Jacobsen,*
    466 U.S. 109 (1984) ............................................................... 8

*United States v. Kitchens,*
  114 F.3d 29 (4th Cir. 1997) ................................................... 1, 8

*United States v. Leonard-Allen,*
  739 F.3d 948 (7th Cir. 2013) ....................................................... 6

*United States v. Owens,*
  782 F.2d 146 (10th Cir. 1986) ............................................... 1, 8

*United States v. Peak,*
  856 F.2d 825 (7th Cir. 1988) ............................................. 1, 5, 6

*United States v. Perez-Garcia,*
  96 F.4th 1166 (9th Cir. 2024) ...............................11, 12, 13, 14

*United States v. Purcell,*
  526 F.3d 953 (6th Cir. 2008) ................................................. 10

*United States v. Rahimi,*
  143 S. Ct. 2688 (2023) (No. 22-915) ..................................... 11

*United States v. Salerno,*
  481 U.S. 739 (1987) ........................................................... 11-12

*United States v. Thomas,*
  65 F.4th 922 (7th Cir. 2023) ................................................... 10

*United States v. Young,*
  573 F.3d 711 (9th Cir. 2009) ..................................................... 9

*Vincent v. Garland,*
  80 F.4th 1197 (10th Cir. 2023) ............................................... 14

*Washington v. Texas,*
  388 U.S. 14 (1967) ........................................................... 1, 2, 5

## Statutes and Rules

720 ILCS 5/12-3 ..................................................................... 14

720 ILCS 5/12-3.05 (renumbered by P.A. 96-1551 (eff. July 1,
  2011)). ................................................................................. 14

Fed. R. Evid. 403 ................................................................. 6, 7

Fed. R. App. P. 35 ................................................................... 1

Fed. R. App. P. 40 ................................................................... 1

**STATEMENT IN SUPPORT OF REHEARING OR REHEARING EN BANC**

Pursuant to Federal Rules of Appellate Procedure 35 and 40, Anthony Gay respectfully petitions for rehearing or for rehearing en banc.

The Panel's decision conflicts with *Washington v. Texas*, 388 U.S. 14 (1967), and *United States v. Peak*, 856 F.2d 825 (7th Cir. 1988), and consideration by the full Court is necessary to maintain uniformity of this Court's decisions.  *See* Section I.

The Panel's decision holding the end of Mr. Gay's paid occupancy necessarily terminated his expectation of privacy in his hotel room involves an issue of exceptional importance and conflicts with *United States v. Kitchens*, 114 F.3d 29 (4th Cir. 1997), and *United States v. Owens*, 782 F.2d 146 (10th Cir. 1986).  *See* Section II.

The Panel's decision conflicts with *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and *Atkinson v. Garland,* 70 F.4th 1018 (7th Cir. 2023), and consideration by the full Court is necessary to maintain uniformity of the Court's decisions.  *See* Section III.

**SUMMARY OF THE CASE**

Mr. Gay was charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g).  The firearm charge rested on a firearm recovered in a public area where Mr. Gay was arrested on May 31, 2020. The ammunition charge rested on bullets seized in a warrantless search of Mr. Gay's hotel room on June 14, 2020.

No witness testified that Mr. Gay possessed, tossed, dropped, or disposed of a gun on May 31, or that Mr. Gay ever possessed ammunition. The Government's circumstantial case was based on testimony from Officers Sailor and Costas, who arrested Mr. Gay on May 31, 2020; and from Officer Mendoza, who searched Mr. Gay's hotel room on June 14, 2020. The Government played bodycam and dashcam video and called witnesses who conducted DNA and fingerprint analysis on the gun and ammunition, but none of that evidence connected Mr. Gay to either the gun or the ammunition.

Proceeding *pro se*, Mr. Gay was tried twice. The first trial concluded on April 21, 2022. The jury was unable to convict. The next day, the trial judge set the case for retrial in five and a half weeks, which he later *sua sponte* advanced by two weeks. Two and a half weeks before the retrial, the judge excluded testimony Mr. Gay elicited during the first trial that explained the reasons for Mr. Gay's actions. On the first day of retrial, the trial court excluded defense testimony showing the gun was recovered in a high crime area because it was "not necessary." The second jury convicted, the trial court denied Mr. Gay's post-trial motions, and a Panel of this Court affirmed.

## ARGUMENT

### I.     The Panel's Decision Conflicts With Decisions Holding The Sixth Amendment Grants Defendants The Right To Present A Defense.

Mr. Gay argued the district court's exclusion of evidence from the second trial that was admitted at the first trial deprived him of his right to present a defense. Op. Br. 36-45; *see Washington*, 388 U.S. at 19 (accused "has the right to present his own witnesses to establish a defense"). In affirming the exclusion

2

of witnesses, the Panel acknowledged "[t]he evidence at the two trials was not identical." App. Dkt. 51, Opinion ("Op.") 4.

In the first trial, Mr. Gay called Officer Gable and State's Attorney Villareal to testify regarding Mr. Gay's then-recent encounter with the Rock Island Police Department. Op. Br. 38-39. Mr. Gay's family members were shot at in two separate incidents on May 23, 2020. Officer Gable responded to the second incident and testified that although Mr. Gay was not arrested, the police detained Mr. Gay and seized his cell phones, cash, and hotel key card. *Id.* Mr. Gay complained of these incidents and later filed a lawsuit against the police. *Id.* Aside from establishing animus, Mr. Gay argued this evidence demonstrated that the Rock Island Police *had access to his hotel room weeks before it was searched. Id.* at 39-41. It also showed Mr. Gay had reasons to avoid the police on May 31 and not to agree to their entry to his hotel room. Although it allowed the Government to argue Mr. Gay's actions evidenced guilt, the district court excluded the exculpatory testimony as "not relevant." Op. Br. 11.

In the first trial, Mr. Gay also called Officer Foy, who testified there had been many service calls—including recent calls for shots fired and ambulance assistance—to 502 6th Street, where the gun was recovered from a public space. Op. Br. 41-42. Mr. Gay introduced an exhibit Foy prepared listing police service calls and firearm reports at the location. The trial court excluded this testimony from the retrial and ruled Mr. Gay could elicit this testimony from Officer Whitcomb. *Id.*

The Panel rejected Mr. Gay's argument that the district judge prevented him from presenting a defense in violation of the Sixth Amendment. Op. 5. Because there was no justification for excluding these witnesses, Mr. Gay was denied his Sixth Amendment right to present a defense.

The Panel did not mention Officer Gable's testimony *at all*. It provided no reason for excluding defense evidence that refuted the Government's arguments as to why Mr. Gay left the car on May 31 and did not want the police to enter his hotel room. As for Villareal, the Panel concluded that "[a]lthough the judge did not cite Fed. R. Evid. 403," the Rule 403 "rationale for exclu[ding Villareal] is clear." Op. 5. This Court has previously declined to use Rule 403 to uphold the exclusion of evidence where nothing in the record suggests the district court actually engaged in Rule 403's "balancing." *E.g.*, *United States v. Chapman*, 765 F.3d 720, 730 (7th Cir. 2014). Moreover, the Government points to no confusion, prejudice to the Government, or delay in the first trial. The testimony took the same length of time—three days—in both trials.

Nor is it correct to state that the May 23 evidence is irrelevant. The Government argued Mr. Gay fled on May 31 due to his guilt, and refused to permit a search of the hotel room to hide his guilt. Dkt. 381 at 774-75. Mr. Gay's theory of defense centered on recent, negative encounters with the Rock Island Police. The testimony from Gable and Villarreal provided an explanation why Mr. Gay did not want the police around his property.

The exclusion of Foy's testimony was also unjustified. Contrary to the Panel's opinion, Op. 4, neither the trial court nor the Government disputed the

relevance of Foy's testimony.  While the Government objected to introducing four years of service calls from 502 6th Street, the exhibit introduced at the first trial was limited to service calls from 2020.  Dkt. 334 at 547-48.

The explanation that Mr. Gay could elicit the same testimony from Detective Whitcomb during the second trial is incorrect.  Whitcomb testified in the first trial that he was unfamiliar with service calls to 502 6th Street.  Dkt. 333 at 461-63.  Whitcomb testified he spoke to the owner at a different address and he was "unaware of 502 6th Street being raided by the police" or its residents being arrested.  *Id.* at 462-63.  Whitcomb could not substitute for Foy's testimony.  Moreover, it is not for the trial judge to select the defendant's witnesses.  *See Washington*, 388 U.S. at 19.

Rehearing is needed to correct the Panel's ruling and to follow Supreme Court decisions establishing Mr. Gay's right to present a defense.  A Court of Appeals reviews *de novo* whether "evidentiary ruling[s] infringed upon a defendant's constitutional rights."  *United States v. Bowling*, 770 F.3d 1168, 1174 (7th Cir. 2014).  The Panel's conclusion that "Gay was convicted on sufficient evidence in a fair trial," Op. 5, conflicts with the Supreme Court's decision in *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("the right to present the defendant's version of the facts . . . is a fundamental element of due process"), and the decisions of this Circuit and several other Circuits.  *Peak*, 856 F.2d at 832–36 (7th Cir. 1988); *United States v. Harris*, 733 F.2d 994, 1003-06 (2d Cir. 1984); *United States v. Evans*, 728 F.3d 953, 963-64 (9th Cir. 2013).  "When erroneously excluded evidence would have been the only or primary evidence in

5

support of or in opposition to a claim or defense," the exclusion is not harmless. *Peak*, 856 F.2d at 834-35; *see also United States v. Leonard-Allen*, 739 F.3d 948, 955 (7th Cir. 2013) ("error was not harmless, because the excluded testimony was central to [the defendant]'s defense").

Other Circuits have cautioned against speculating what the effect of excluded exculpatory evidence would have been, particularly where the excluded evidence was central to the defense. *E.g.*, *Harris*, 733 F.2d at 1005 (error in excluding as hearsay proffered testimony showing the defendant's state of mind was not harmless); *Evans*, 728 F.3d at 963-64. In *Harris*, the defendant was charged in a drug conspiracy and sought to introduce testimony to support his main theory that he knew he was selling heroin to an informant and played along out of fear. 733 F.2d at 1000. The district court excluded the proffered testimony and the Second Circuit reversed. *Id.* at 1003, 1006. The Second Circuit emphasized that the excluded witnesses "were to be the only defense witnesses and their testimony would have supported the main theory of the defense." *Id.* at 1005. It was therefore "impossible to conclude that substantial rights were not affected," despite the possibility that the jury might have rejected the excluded witnesses as untrustworthy. *Id.* (citation omitted).

In *Evans*, the defendant was charged with immigration offenses, including "misrepresenting his identity and citizenship" to obtain government benefits. 728 F.3d at 956. The district court excluded the defendant's birth certificate under Rule 403, concluding the birth certificate was "without probative weight" and could "only lead to undue delay." *Id.* at 963. The Ninth Circuit rejected the

6

risk of unfair prejudice, confusion, and misleading the jury as reasons to exclude the evidence under Rule 403, noting the government had time and opportunity to introduce conflicting evidence. *Id.* at 965. Finding a violation of the right to present a defense, the *Evans* court considered whether the government could show the error was harmless. *Id.* at 966-67. Noting that the first jury could not reach a verdict, the Ninth Circuit found the error was not harmless. *Id.* It did "not know the effect that the birth certificate would have had on the outcome of the trial, including whether it would have affected the jurors' assessment of [the defendant's] own testimony or the testimony of any other witnesses." *Id.* at 967.

Rehearing is needed to correct the district court's pretrial rulings excluding Foy, Gable, and Villarreal, which collectively prevented Mr. Gay from casting doubt on the Government's version of events and denied him the opportunity to present a defense.

## II. The Panel's Refusal To Suppress The Warrantless Search Of Mr. Gay's Hotel Room Conflicts With Established Law.

Undisputed testimony at the suppression hearing established the innkeeper—Mr. Patel—extended Mr. Gay's tenancy to June 15. The warrantless search on June 14 was therefore unconstitutional.

The facts, not mentioned by the Panel, are undisputed: Mr. Patel testified that on June 1 he gave Mr. Gay two weeks to collect his belongings; Officer Mendoza understood Mr. Gay had two weeks from June 1, 2020 to clear out the room; the hotel register data showed that Mr. Gay was still checked in during the search; and Mr. Patel can be heard on bodycam footage asking Mendoza *after* the search, "So I can check him out now?" *See* Op. Br. 32–34; App. Dkt. 43,

Reply 15.  While Mr. Patel later claimed he meant Mr. Gay had two weeks to collect his property from storage, the Patels repeatedly recognized Mr. Gay's privacy interest in the room itself by leaving his belongings there, leaving him checked in, and denying third parties' entry to the room.

The Panel's determination that Mr. Gay no longer had a legitimate expectation of privacy, Op. 2-3, conflicts with the decisions of other Circuits.  In *United States v. Owens*, the Tenth Circuit concluded that a guest had a reasonable expectation of privacy in a motel room after check-out time because, as here, the guest paid late on several occasions.  782 F.2d 146, 150 (10th Cir. 1986).  In *United States v. Kitchens*, the Fourth Circuit similarly held that a guest may have a legitimate expectation of privacy in a hotel room after the rental period "if there is pattern or practice which would make that expectation reasonable."  114 F.3d 29, 32 (4th Cir. 1997); *see also United States v. Dorais*, 241 F.3d 1124, 1129 (9th Cir. 2001) ("the mere expiration of the rental period, in the absence of affirmative acts of repossession by the lessor, does not automatically end a lessee's expectations of privacy").  In this case, the hotel register showed Mr. Gay previously paid in installments, and Mr. Patel acknowledged that he allowed Mr. Gay to pay late because he was a good customer and Mr. Patel "kn[e]w him."  Dkt. 380 at 255-56.

The Panel's observation that the Patels found the bullets before the police were involved, Op. 3, does not eliminate Mr. Gay's legitimate expectation of privacy.  Every Circuit that has considered the issue has declined to apply *United States v. Jacobsen*, 466 U.S. 109 (1984), as the Panel did here, to searches of

8

private residences or hotel rooms.  In *United States v. Young*, 573 F.3d 711 (9th Cir. 2009), the Ninth Circuit declined to permit a warrantless search of the defendant's hotel room, even though hotel staff, not law enforcement, initially observed a gun in the defendant's room.  *Id.* at 713.  The court rejected the government's argument that because law enforcement did not exceed the scope of the earlier, private search by hotel staff, the warrantless search was permissible.  *Id.* at 720-21.  In *United States v. Allen*, the Sixth Circuit similarly read *Jacobsen* narrowly, distinguishing the contents of a hotel room from the mail package in *Jacobsen*, "the entire contents of which were obvious."  106 F.3d 695, 699 (6th Cir. 1997).  The defendant in *Allen* maintained a "legitimate and significant privacy interest in the contents of his motel room," and the hotel manager's search of defendant's room did not extinguish his privacy interest in the room's contents for Fourth Amendment purposes.  *Id.*

The Panel referred to the Patels' discovery of the bullets as a "private search,"  Op. 3, but the Patels' observations were not the incriminating evidence the Government presented.  Mendoza thereafter searched the room and seized the bullets.  It was the degree of match between the bullets and the gun, which the Patels did not provide, that the Government presented and the Panel recited. *See id.*

Nor did the Patels have "every right to [admit the police] under applicable state law."  *See* Op. 3.  The Government argued Mendoza relied on the Patels' *apparent* authority to consent to the search, but this is directly contradicted by the decisions of this and other Circuits and Mendoza's testimony that Mr. Gay

had two weeks before the Patels "were going to get his belongings" from the room. Dkt. 311 at 144.  *E.g.*, *United States v. Thomas*, 65 F.4th 922, 926 (7th Cir. 2023) (apparent authority "rests on the facts known to law enforcement at the time of the search"); *see also United States v. Purcell*, 526 F.3d 953, 963 (6th Cir. 2008) (determination of consent must be judged by facts available to the officer at the moment).

Holding that Mr. Gay's parole status severely diminished his privacy interest, Op. 3—when there is no evidence that Mendoza was even aware of his parole status—further conflicts with decisions of the Supreme Court and other Circuits.  In *Samson v. California*, the Supreme Court declined to hold that a parolee categorically has no expectation of privacy. 547 U.S. 843, 850 n.2 (2006). In *United States v. Freeman*, the Tenth Circuit cited *Samson* as "establishing [] limits" on parolee searches, noting that "all parolees have criminal records, and if this were sufficient to warrant reasonable suspicion, there would effectively be no limits on the ability of law enforcement officers to conduct warrantless searches of parolees' homes."  479 F.3d 743, 749 (10th Cir. 2007).

## III.   The Panel Or Full Court Should Rehear Mr. Gay's Second Amendment Argument.

If the Court declines to grant rehearing on the foregoing issues, Mr. Gay requests the Court rehear his Second Amendment argument and remand the case to apply *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), as this Court directed in *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023).  Alternatively, the Court could hold the case until the

decision in *United States v. Rahimi,*143 S. Ct. 2688 (2023) (No. 22-915), and remand for application of that decision.[1]

The Panel rejected Mr. Gay's Second Amendment defense, holding parolees "lack the same armament rights as free persons." Op. 7. The Panel analogized the case to *Samson v. California*, 547 U.S. 843 (2006), a Fourth Amendment case involving parolees' privacy rights, and relied on *United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024), *pet. for reh'g filed* May 11, 2024, a case involving pretrial detainees. Op. 7.

*Bruen*'s two-step process fundamentally changed the Second Amendment analysis. A court must consider whether the Second Amendment's text covers the individual's conduct and whether a firearm regulation is justified by our nation's historical tradition. *See Atkinson*, 70 F.4th at 1022-23. The Panel did neither.

The cases the Panel cited do not substitute for *Bruen*'s analysis. Addressing the rights of parolees, an issue not addressed below or in the parties' briefs, the Panel reasoned by analogy from *Samson*, stating that just as a parolee's Fourth Amendment rights may be limited, so too may his armament rights. Op. 7. *Bruen* does not use Fourth Amendment analysis to decide the Second Amendment question.

In *Perez-Garcia,* cited by the Panel, the Ninth Circuit rejected this type of reasoning by analogy. There, the government argued *United States v. Salerno*,

---

[1]This Court can further hold the case until it decides *United States v. Prince*, No. 23-3155, in which issues raised here, among others, will be presented.

481 U.S. 739, 742 (1987), a decision rejecting due process and Eighth Amendment challenges to the Bail Reform Act, resolved the Second Amendment challenge to the same statute.  96 F.4th at 1174-75.  The government reasoned the greater power to detain an individual included the lesser power to deprive the individual of firearms.  The Ninth Circuit disagreed: *Salerno* did not address the firearm restriction and the government's "one-size-fits-all" approach did not satisfy *Bruen*.  *Id.* at 1175-76.  *Samson* does not address the firearm issue either.

The Panel cited *Perez-Garcia*, but that case demonstrates the need for rehearing.  Whereas the Ninth Circuit's detailed opinion applied the two-step *Bruen* test in upholding a temporary firearm restriction, the Panel's abbreviated decision did not address issues critical to a Second Amendment challenge.  Engaging in the required textual analysis, the Ninth Circuit found the Second Amendment presumptively applied to persons on bail, rejecting the government's argument that they were not "law-abiding citizens."  *Perez-Garcia*, 96 F.4th at 1178-79 (citation omitted).  It added that the Supreme Court has never found felons to be outside the protection of the Second Amendment, *id.*, a conclusion that echoed this Court's decision in *Atkinson*, 70 F.4th at 1022.

The Ninth Circuit also engaged in a historical analysis, which the Panel did not perform.  It found that in colonial times, individuals charged with felonies were not released on bail and were therefore deprived of the right to bear arms.  *Perez-Garcia*, 96 F.4th at 1182-86.  Bail did not displace the prior practice of disarming accused felons.  *Id.* at 1186-87.  The Ninth Circuit also addressed whether the detainees were likely to engage in a breach of the peace or pose a

12

threat to safety, standards echoing history. *Id.* at 1190-91. Importantly, it found the order disarming the pretrial detainees was based on a judicial officer's determination that the firearm condition was "the least restrictive way to assure the safety of the community as well as their appearances in court." *Id.* at 1190. In contrast, the Panel did not determine whether history justified terminating Mr. Gay's Second Amendment rights where the restriction was not imposed after a judicial determination.

The Ninth Circuit's more recent decision in *United States v. Duarte* demonstrates the nuance the Panel here avoided. No. 22-50048, 2024 WL 2068016 (9th Cir. May 9, 2024). In *Duarte*, the court held Section 922(g)(1) was unconstitutional as applied. The court rejected the application of pre-*Bruen* precedent, *id.* at *7-8, found the Second Amendment applied to "all" citizens, even felons, *id.* at *9-13, and found barring Duarte from possessing a firearm "after he has already served his terms of incarceration" was unconstitutional. *Id.* at *13, *15. The Ninth Circuit addressed Duarte's prior felonies, which it characterized as non-violent and insufficient to terminate his Second Amendment rights. *Id.* at *24.

Finally, the Panel's statements that Mr. Gay was not a "law-abiding, responsible citizen[]," Op. 6, does not constitute the textual and historical analyses *Bruen* calls for. That argument did not carry the day in *Atkinson*, where the petitioner was also a felon, and was rejected in *Duarte*. The Panel recited that Mr. Gay spent almost twenty-five years in prison and highlighted convictions for aggravated battery and possession of a weapon in prison, Op. 6-

13

7, but it did not analyze his propensity for violence or dangerousness. Had the Panel done so, it would have recognized Mr. Gay's most recent felony conviction concerns conduct from more than twenty-three years ago, and his dangerousness has not been shown. *See* Dkt. 435. Moreover, the aggravated battery offenses the Government references and the Panel mentions were charged under a statute permitting a conviction for "contact of an insulting or provoking nature," without proof of bodily injury. *See* 720 ILCS 5/12-3; 720 ILCS 5/12-3.05 (renumbered by P.A. 96-1551 (eff. July 1, 2011)). The indictment does not allege prior violence. *See* Dkt. 1; Dkt. 436, A1-6. The only crime of violence in Mr. Gay's history is a thirty-year-old robbery conviction for stealing a hat and one dollar. Dkt. 429 at 2 n.2; *see also* Dkt. 435. What constitutes a "law-abiding citizen," if even the relevant question, has divided the Circuits. *Compare Range v. Attorney General*, 69 F.4th 96, 101-03 (3d Cir. 2023), *and Perez-Garcia*, 96 F.4th at 1178-79, *with United States v. Jackson*, 69 F.4th 495, 501-06 (8th Cir. 2023), *and Vincent v. Garland*, 80 F.4th 1197, 1201-02 (10th Cir. 2023). Whether Mr. Gay's prior offenses justify a permanent prohibition from possessing a firearm requires analysis, best performed on remand, and best informed by a factual record and the decision in *Rahimi*.

The Panel decided an important Second Amendment issue without engaging in the analysis *Bruen* requires. The Court should grant rehearing and remand this case to apply the *Bruen* standard. Alternatively, it should await the Supreme Court's decision in *Rahimi* and apply that decision in resolving this petition.

## CONCLUSION

For the foregoing reasons, Anthony Gay respectfully requests that the Panel rehear this appeal or, alternatively, this Court grant rehearing en banc.

Respectfully submitted,

ANTHONY GAY

/s/ Michael T. Brody

Michael T. Brody
    *Counsel of Record*
Reanne Zheng
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
mbrody@jenner.com
rzheng@jenner.com

*Counsel for Defendant-Appellant Anthony Gay*

Dated: May 16, 2024

15

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 40

1.     This petition complies with the type-volume limitation of Fed. R. App. P. 35(b) and 40(b) because this petition contains 3,864 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2.     This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12-point Bookman Old Style font for the main text and 11-point Bookman Old Style font for the footnotes.

Dated: May 16, 2024

/s/Michael T. Brody
Michael T. Brody

**CERTIFICATE OF SERVICE**

I, Michael T. Brody, an attorney, hereby certify that on May 16, 2024, I caused the **Defendant-Appellant Anthony Gay's Petition For Rehearing Or For Rehearing En Banc** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system, which also caused a copy of the foregoing to be delivered by electronic means to counsel listed below.

Pursuant to ECF Procedure (h)(2) and Circuit Rule 40(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 30 copies of the above cited petition to be transmitted to the Court via hand delivery within three days of that notice date.

W. Scott Simpson
Assistant United States Attorney
Office of the United States Attorney
318 South Sixth Street
Springfield, IL 62701-1806

Dated: May 16, 2024

/s/ Michael T. Brody
Michael T. Brody